**David W. HOLDER, Appellant,**

v.

**HAARMANN & REIMER CORPORATION,**
**Appellee.**

**No. 00–CV–875.**

District of Columbia Court of Appeals.

Argued June 18, 2001.

Decided Aug. 16, 2001.

---

Leonard Egan, for appellant.

Daniel F. Attridge, with whom Mark L. Kovner and David B. Florenzo, were on the brief, for appellee.

Robert R. Rigsby, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Bennett Rushkoff, Senior Counsel, filed a brief for the District of Columbia, amicus curiae, urging reversal.

Before SCHWELB and RUIZ, Associate Judges, and BELSON, Senior Judge.

SCHWELB, Associate Judge:

David W. Holder appeals from a trial court order dismissing for lack of personal

jurisdiction a class action brought by Holder against Haarmann & Reimer Corporation (H & R) under the District's Antitrust Act of 1980, D.C.Code §§ 28–4501 *et seq.* (1996 & Supp.2000). On appeal, Holder contends that H & R transacts business in the District and that, contrary to the trial judge's finding, H & R is therefore amenable to suit in the Superior Court. Holder bases his jurisdictional theory solely on the following asserted contacts between H & R and the District: H & R conspired with other manufacturers, outside the District, to fix the price of citric acid; H & R then sold citric acid at an artificially inflated price to manufacturers outside the District; the manufacturers integrated the citric acid into various end products; the manufacturers then sold the end products directly or indirectly to retailers; the retailers subsequently sold the end products to consumers throughout the country; an unknown number of these consumers purchased, in the District, end products, some unknown quantity of which was alleged to have contained citric acid manufactured by H & R. According to Holder, these asserted contacts constitute transacting business in the District of Columbia within the meaning of our long-arm statute, D.C.Code § 13–423(a)(1) (1995 & 2001).

If Holder's jurisdictional theory were correct, then, for purposes of our long-arm statute, H & R would be "transacting business" in the District of Columbia and, by extension, perhaps also in every jurisdiction in this country, and even the world, regardless of how minimal an amount of citric acid sold by it reached the respective jurisdiction, and in spite of the absence of any other contact between H & R and the jurisdiction. In other words, H & R would

be deemed to be transacting business anywhere that a product containing any amount of citric acid produced by H & R was ultimately sold to a consumer. Such a definition of transacting business recognizes no sensible limiting principle and would require H & R to anticipate being haled into court virtually anywhere in the world on the theory that it transacts business everywhere. The logic of Holder's argument appears to assume that, as the seller of a chattel, H & R has effectively transacted business in the District by "appoint[ing] the chattel [its] agent for service of process; [H & R's] amenability to suit [on a transaction of business theory] would travel with the chattel." *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 296, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (punctuation altered). For the reasons set forth below, we decline to adopt Holder's far-reaching notion of transacting business, and we affirm the judgment of the trial court.

## I.

## PROCEDURAL BACKGROUND

On February 8, 1999, Holder instituted the instant suit on his own behalf and as the representative of a class of similarly situated consumers in the District of Columbia.[1] The complaint alleges that H & R violated the District's Antitrust Act by participating in a national and international criminal conspiracy with other manufacturers to fix the price of the citric acid that H & R produced. According to the plaintiff, H & R's citric acid was then sold to manufacturers who, in turn, integrated it

---

1. The action was originally brought not only against H & R, but also against a second manufacturer of citric acid, F. Hoffman–LaRoche Ltd. The trial court subsequently approved a class-wide settlement between the plaintiff and Hoffman–LaRoche, and on June 26, 2000, the suit against that defendant was dismissed. As a result, Holder and his class and H & R are the only remaining parties to the litigation.

into a variety of end products [2] which were sold to retailers and then ultimately to consumers, *inter alia*, in the District of Columbia.

The present suit had its origins in the criminal prosecution of H & R for conspiring to fix the price of citric acid in violation of federal antitrust laws. On January 29, 1997, pursuant to a plea agreement, H & R entered a plea of guilty in the United States District Court for the Northern District of California to criminal violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.* (1994 & Supp. V 1999). The unlawful conduct embraced by the plea occurred over a period that began in early 1991 and continued through mid–1995. The violation of the District's Act alleged by Holder in this case was premised on the price-fixing conspiracy that was the subject of the federal prosecution. Specifically, Holder alleges that, during the time period in which the federal violations were occurring, he and the other potential class members "purchased in the District of Columbia beverages, foods and other consumer goods containing citric acid manufactured or distributed by [H & R]," and that he and the other potential plaintiffs "sustained damages arising from the overpayment for consumer goods containing citric acid as a result of [H & R's] violations of the District of Columbia antitrust laws."

On April 5, 1999, pursuant to Super. Ct. Civ. R. 12(b)(2), H & R filed a motion to dismiss Holder's complaint for lack of personal jurisdiction. H & R asserted that it had not transacted business in the District of Columbia and that the company did not have the required minimum contacts with the District which would permit the Superior Court to exercise personal jurisdiction over H & R. H & R's motion was accompanied by an affidavit by Susan I. Baer, H & R's corporate secretary, in which she represented, *inter alia*, that H & R had no office in the District of Columbia and that the company had not engaged in any business within this jurisdiction.[3] On July 9, 1999, following a hearing on this motion, the trial judge dismissed the complaint for lack of personal jurisdiction. In the judge's view, "[t]here is a lack of sufficient contact [between H & R and] this jurisdiction to make further proceeding against Haarmann & Reimer fair, just and legal." This timely appeal followed.

## II.

## LEGAL PRINCIPLES AND FACTUAL BACKGROUND

Throughout this litigation, the focus of Holder's argument has been that the Superior Court has authority to exercise personal jurisdiction over H & R because, and only because, the corporation has transacted business in the District of Columbia. *See* D.C.Code § 13–423(a)(1).[4] In fact,

---

2. Citric acid is a "colorless translucent crystalline acid ... principally derived by fermentation of carbohydrates from lemon, lime and pineapple juices used in preparing citrates and in flavorings and metal polishes." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 349 (3d ed.1992). It is a common "ingredient in beverages, foods, and other consumer goods, used to add tartness, to increase shelf-life, and as a substitute for phosphates."

3. Holder opposed H & R's motion, but he did not file a counter-affidavit. Instead, he relied

on the allegations contained in his unverified complaint and in his written opposition to the motion.

4. The District's long-arm statute provides, in pertinent part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

when Holder's attorney was asked during oral argument before this court, whether he was relying on any subsection of the District's long-arm statute other than D.C.Code § 13–423(a)(1), counsel answered unequivocally in the negative. Holder has thus conceded, for purposes of this appeal, that H & R's alleged transaction of business in the District constitutes the only basis for the exercise by the Superior Court of personal jurisdiction over H & R. In other words, Holder's concession means that if the company did not transact business in the District, the trial court's judgment must be affirmed, and our inquiry is confined accordingly. We take the case as presented to us, and we limit our analysis to the question whether the Superior Court had personal jurisdiction over H & R pursuant to D.C.Code § 13–423(a)(1).

### A. *Applicable legal principles.*

As an initial matter, we note that Holder, as the plaintiff, has the burden of establishing that the trial court had personal jurisdiction over H & R, the sole remaining defendant in the litigation. *E.g., Parsons v. Mains,* 580 A.2d 1329, 1330 (D.C.1990) (per curiam). In this case, the facts relevant to the jurisdictional analysis are not in dispute, see *infra* Part II. B, and we review *de novo* the application of the relevant legal principles to those facts. *Cf., e.g., Shoppers Food Warehouse v. Moreno,* 746 A.2d 320, 330–32 (D.C.) (en banc), *cert. denied,* 530 U.S. 1270, 120 S.Ct. 2737, 147 L.Ed.2d 997 (2000).

These legal principles may be summarized as follows: First, "[a] court may assert personal jurisdiction over a nonresident defendant where service of process is authorized by statute and where the service of process so authorized is consistent with due process." *Mouzavires v. Baxter,* 434 A.2d 988, 990 (D.C.1981) (en banc) (per curiam) (plurality opinion) (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Because the "transacting business" prong of the District's long-arm statute is coextensive with the Due Process Clause, *e.g., Shoppers Food Warehouse, supra,* 746 A.2d at 329; *Mouzavires, supra,* 434 A.2d at 993, our personal jurisdiction analysis in this case merely requires us to consider whether any business transacted by H & R in the District was sufficient to permit the court to conclude that "the assertion of personal jurisdiction comports with due process." *Mouzavires, supra,* 434 A.2d at 993 (citation omitted). In other words, we must determine whether, through its "business contacts within [the District of Columbia,]" H & R had such "minimum contacts with [the District] that the maintenance of [Holder's] suit does not offend traditional notions of fair play and substantial justice." *Shoppers Food Warehouse, supra,* 746 A.2d at 330, 331 (citations and quotation marks omitted); *see also, e.g., Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780–81, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Int'l Shoe, supra,* 326 U.S. at 316, 66 S.Ct. 154. A critical inquiry is whether H & R "has purposefully directed its activities at residents of the forum." *Shoppers Food Warehouse, su-*

---

(1) transacting any business in the District of Columbia[.]

 * * *

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C.Code § 13–423.

 Because we dispose of this case under section 13–423(a)(1), we express no opinion regarding whether the Superior Court's exercise of personal jurisdiction over H & R would satisfy section 13–423(b).

pra, 746 A.2d at 331 (quotation marks, alteration, and citation omitted). As the Supreme Court explained in *Burger King v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985),

> [t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." [*Int'l Shoe, supra,*] 326 U.S. at 319 [,66 S.Ct. 154]. By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World–Wide Volkswagen* [, *supra*, 444 U.S. at 297, 100 S.Ct. 559].

(Footnote omitted; alteration in quotation in original.)

 Second, these minimum contacts must derive from the defendant's having "transact[ed] any business in the District of Columbia." D.C.Code § 13–423(a)(1).[5] When we decided in *Mouzavires, supra,*

that section 13–423(a)(1) reached to the limits permitted by the Constitution, we held that "the sweep of the 'transacting any business' provision [of the District's long-arm statute] covers *any transaction of business in the District of Columbia* that can be reached jurisdictionally without offending the Due Process Clause." 434 A.2d at 993 (emphasis added). Similarly, when setting forth the legal principles applicable to a personal jurisdiction analysis under section 13–423(a)(1) in *Shoppers Food Warehouse, supra,* we focused on the extent of the "nonresident defendant's *business contacts* ... within the forum jurisdiction." 746 A.2d at 331 (emphasis added); *see also Flocco v. State Farm Mut. Auto. Ins. Co.,* 752 A.2d 147, 163 (D.C.2000) (rejecting exercise of personal jurisdiction over individual corporate officers and directors because *they* were "clearly not '*doing business*' within the District of Columbia" when they were "merely [alleged to have acted as] employees of a company that has contacts with the District" (emphasis added)). Consequently, to satisfy the due process requirements associated with the Superior Court's exercise of personal jurisdiction over a nonresident defendant under section 13–423(a)(1), the plaintiff must show that the defendant has purposefully engaged in some type of commercial or business-relat-

---

5. Otherwise—that is, if sufficiently close contacts *of any kind* between the nonresident defendant and the District of Columbia were sufficient to allow the Superior Court to exercise personal jurisdiction over that defendant under the "transacting business" prong of section 13–423(a)(1)—then the other prongs of the long-arm statute would be superfluous. *See* D.C.Code § 13–423(a)(2)–(7). Any interpretation of section 13–423(a)(1) which would apply it to contexts other than the transaction of business in the District therefore cannot be correct. Indeed, we have noted that the other provisions of the long-arm statute may not authorize the exercise of jurisdiction to the

full extent permitted by the Due Process Clause. *See Mouzavires, supra,* 434 A.2d at 991, quoting as follows from *Piracci v. New York City Retirement Sys.,* 321 F.Supp. 1067, 1070 n. 3 (D.Md.1971):

> If we consider the outer limits of jurisdiction permitted by the Due Process Clause as the circumference of a circle or the outer edge of a pie, and the six "enumerated acts" in § 96(a)(1)-(6) [Maryland's long-arm statute] as six slices of the pie, it appears that some slices go all the way to the outer limit of the circle, while others stop short of the outer limit.

(Alteration in *Mouzavires.*)

ed activity directed at District residents. *Shoppers Food Warehouse, supra,* 746 A.2d at 330–31. "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts ... or of the unilateral activity of another party or a third person." *Burger King, supra,* 471 U.S. at 475, 105 S.Ct. 2174 (citations and quotation marks omitted). "Jurisdiction is proper [only] where the contacts [between the defendant and the forum] proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Id.* (emphasis in original; citations and quotation marks omitted).

 Third, the minimum contacts analysis does not constitute a "mechanical test[ ]" in which we apply "talismanic jurisdictional formulas" to determine whether the Superior Court may properly exercise personal jurisdiction over any given defendant. *Id.* at 478, 485, 105 S.Ct. 2174 (quotation marks omitted). Rather, "the facts of each case must always be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice." *Id.* at 485–86, 105 S.Ct. 2174 (citations and alteration omitted), *quoted in Shoppers Food Warehouse, supra,* 746 A.2d at 328. We therefore turn to the specific facts underlying the personal jurisdiction analysis in this particular case.

B. *Relevant jurisdictional facts.*

 The relevant jurisdictional facts are set forth in the affidavit of Ms. Baer, and Holder has not disputed them. H & R is a

Delaware corporation, and its headquarters are located in New Jersey. During the time period in question, "H & R manufactured citric acid in the United States at plants in Indiana and Ohio—not in D.C." [6] "[C]itric acid made by H & R was sold to [H & R's] customers around the country, none of which [customers] were [sic] located in D.C." Holder admits that no citric acid produced by H & R was ever sold directly to, or purchased by, the plaintiff or "any other member of the alleged class." Rather, H & R sold citric acid to other manufacturers who, somewhere along the chain of manufacture and distribution, incorporated the citric acid into end products which were allegedly sold in the District. As Holder's counsel put it in his brief, H & R's citric acid reached the District, if at all, "through a chain of manufacturers, distributors, and retailers selling and distributing consumer products containing citric acid." [7] Thus, H & R neither manufactured nor sold citric acid in the District of Columbia.

Nor did H & R engage in any other relevant business-related conduct within the District during the time period in question. According to Ms. Baer's affidavit, "at least since 1991, H & R has not owned, leased, or held any interest in any real property in the District of Columbia; H & R has not had an office in the District of Columbia; and H & R has not paid taxes in the District of Columbia." Further, "at least since 1991, H & R has not been party to any litigation [other than the instant case] in the District of Columbia." Holder has not alleged that H & R engaged in any activity related to the price-fixing conspiracy in the District; rather,

6. H & R sold its citric acid business in 1998 (after the time period relevant to this case) and no longer produces or sells the product.

7. On the current state of the record, it is not even certain that any citric acid manufactured

by H & R ever reached the District; the record merely contains Holder's allegations, unsupported by affidavit or other evidence, that consumer products sold in the District included some citric acid produced by H & R.

he acknowledges that he "does not know where this conspiracy actually took place[,] but he doubts [that] it was in the District."

## III.

## ANALYSIS

Holder argues that the Superior Court may exercise personal jurisdiction over H & R because H & R "carried on [a] purposeful and deliberate series of business transactions, from manufacturer to processor to retailer to consumer" that ultimately led to transactions in the District between District residents. According to Holder, "[t]hat itself satisfies the provision of the [l]ong-[a]rm statute for jurisdiction over persons transacting business in the District," and, because that provision is coextensive with the Due Process Clause, it also meets the applicable constitutional requirements.[8] We disagree.

 As an initial matter, our review of the record has convinced us that Holder has not carried the initial burden of demonstrating that H & R has "transact[ed] any business in the District of Columbia." D.C.Code § 13–423(a)(1); *see also, e.g., Shoppers Food Warehouse, supra,* 746 A.2d at 331. Although the assertion of jurisdiction under the "transacting business" prong may be permissible even if the defendant has not been physically present in the District, *e.g., Shoppers Food Warehouse, supra,* 746 A.2d at 327 (citing *Mouzavires, supra,* 434 A.2d at 995, 997), our cases require a substantially closer business-related nexus between the forum and

8. In his brief on appeal, Holder further argues that the Superior Court has personal jurisdiction over H & R because "H & R engaged in intentional criminal acts[, *i.e.,* the price-fixing conspiracy to which it entered a plea of guilty,] the effect of which reached into the District of Columbia by damaging whoever purchased food and beverage products containing citric acid in the District," so that the "ultimate victims of [H & R's] criminal acts were the District consumers at the end of the distribution chain." (Footnote omitted.) Adopting this argument, however, would require us to base personal jurisdiction over H & R on a separate prong of the District's long-arm statute, namely on the provision which authorizes the Superior Court to exercise personal jurisdiction over a defendant who has "caus[ed] tortious injury in the District of Columbia by an act or omission outside the District of Columbia." D.C.Code § 13–423(a)(4). At oral argument, counsel for plaintiff expressly disavowed reliance on this statutory provision, and he asked us to find personal jurisdiction over H & R solely under the "transacting business" prong, D.C.Code § 13–423(a)(1). See *supra* pp. ──────. In light of the position taken by his attorney, we have no occasion to consider arguments supportive of personal jurisdiction over H & R under D.C.Code § 13–423(a)(4). Consequently, the reliance in Holder's brief on authorities such as, *e.g., Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), is misplaced. In *Calder* and like cases, personal jurisdiction was founded upon a *tortious injury sustained within the forum* but caused by conduct elsewhere. *E.g.,* 465 U.S. at 789–90, 104 S.Ct. 1482. Moreover, under D.C.Code § 13–423(a)(4), Holder also would have to demonstrate that H & R "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."

In support of the argument noted at the outset of this footnote, Holder also cites cases such as, *e.g., Janmark, Inc. v. Reidy,* 132 F.3d 1200 (7th Cir.1997), and *Execu–Tech Bus. Sys., Inc. v. New Oji Paper Co.,* 752 So.2d 582 (Fla.), *cert. denied,* 531 U.S. 818, 121 S.Ct. 58, 148 L.Ed.2d 25 (2000). His reliance on these authorities is also misplaced, for these cases were decided under a theory of personal jurisdiction based on the nonresident defendant's having allegedly caused in-state injury through tortious conduct asserted to have taken place within the jurisdiction. *Janmark, supra,* 132 F.3d at 1202; *Execu–Tech, supra,* 752 So.2d at 585. While the District's long-arm statute has an analogous provision, D.C.Code § 13–423(a)(3), plaintiff's counsel has expressly disavowed any reliance on it as well. See *supra* pp. ──── ───.

the defendant than has been alleged or shown here. We have, for example, stated that "[f]or an entity to be transacting business within this jurisdiction[,] some *purposeful, affirmative activity within the District of Columbia is required." Bueno v. La Compania Peruana de RadioDifusion, S.A.,* 375 A.2d 6, 8 (D.C.1977) (emphasis added); *accord, Shoppers Food Warehouse, supra,* 746 A.2d at 330–31. Similarly, like the Supreme Court, *see Burger King, supra,* 471 U.S. at 475, 105 S.Ct. 2174, we have required the business contacts between a nonresident defendant and the forum to be "voluntary and deliberate, rather than fortuitous" and "accidental," in order to provide a basis for the exercise of personal jurisdiction over that defendant. *Mouzavires, supra,* 434 A.2d at 995, 997. And, also like the Supreme Court, we have specifically rejected, as inconsistent with due process requirements, the notion that personal jurisdiction over a nonresident defendant under section 13–423(a)(1) may be premised on "the unilateral activity of another party or a third person." *Sol Salins, Inc. v. Sure Way Refrigerated Truck Transp. Bro-*

*kers, Inc.,* 510 A.2d 1032, 1035 (D.C.1986) (citation and quotation marks omitted); *see also, e.g., World–Wide Volkswagen, supra,* 444 U.S. at 298, 100 S.Ct. 559 ("But the mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.") (citation and quotation marks omitted). Further, "a defendant's awareness that the stream of commerce *may* or *will* sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state." *Asahi Metal Indus. Co. v. Super. Ct.,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (O'Connor, J.) (plurality opinion) (emphasis added).[9]

Based on these principles, we have held that the Superior Court may properly exercise personal jurisdiction over a nonresident defendant under section 13–423(a)(1) if that defendant—itself—has directly shipped goods into the District and has sold them here to District retailers. *Cohane v. Arpeja–California, Inc.,* 385 A.2d 153, 159 (D.C.1978). Similarly, a

9. In his reply brief, Holder relies extensively on *Stabilisierungsfonds fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.,* 207 U.S.App.D.C. 375, 647 F.2d 200 (1981), as authority for the proposition that the Superior Court may exercise personal jurisdiction over H & R because its citric acid is said to have ultimately made its way into this jurisdiction. The District makes much the same point in its brief *amicus curiae.* To be sure, personal jurisdiction over a nonresident defendant was found to exist in *Stabilisierungsfonds* because the defendants' wine was ultimately sold in the District to District consumers, but that decision, too, was predicated upon a much closer business-related nexus between the defendants and the forum than this case's attenuated connection between H & R and the District. 207 U.S.App.D.C. at 380–81, 647 F.2d at 205–06. In *Stabilisierungsfonds,* the defendants sold wine to a local distributor who had the exclusive right to distribute it, in

its unadulterated form, to east coast retailers, including liquor stores located in the District of Columbia. 207 U.S.App. D.C. at 380, 647 F.2d at 205. So far as we can discern from the present record, on the other hand, H & R sold its citric acid to a variety of customers who integrated it into their own products, which then may or may not have been sold in the District. Unlike the defendants in *Stabilisierungsfonds,* H & R thus did not choose "a course of conduct that render[ed] sales of their [product specifically in the District] not merely foreseeable, but affirmatively welcomed." *Id.* The court in *Stabilisierungsfonds* reached its conclusion that personal jurisdiction existed over the nonresident defendants because they had specifically targeted, and "expect[ed] to derive benefits from, a market for their goods in the District." *Id.* The record does not support a similar conclusion here.

nonresident defendant who had advertised extensively in the District and specifically targeted District consumers as potential customers for its Maryland stores was held to be amenable to suit in the District where a resident of the District alleged that she had fallen and suffered injury in one of that defendant's Maryland stores. *Shoppers Food Warehouse, supra,* 746 A.2d at 330–32. However, personal jurisdiction over a nonresident defendant was held to be lacking where the defendant did not provide any services in the District, and where the defendant's only contact with the District was "the delivery . . ., at the request and expense of the [resident plaintiff], of a duplicate original contract executed by [the defendant] in Peru." *Bueno, supra,* 375 A.2d at 9. We have likewise held that the Superior Court lacked personal jurisdiction over a nonresident defendant whose contacts with the District resulted from the unsolicited and unilateral activity of another party, a principle that applies whether that party is the resident plaintiff or a third person. *Sol Salins, supra,* 510 A.2d at 1035; *see also, e.g., World–Wide Volkswagen, supra,* 444 U.S. at 298, 100 S.Ct. 559. "It is important in our analysis to recognize that the 'unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.'" *Sol Salins, supra,* 510 A.2d at 1035 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

This case is closer to *Bueno* and *Sol Salins* than it is to *Cohane* and *Shoppers Food Warehouse.* Like the defendant in *Bueno, supra,* 375 A.2d at 9, H & R has not provided any services in the District. In fact, its contacts with the District are even more attenuated than those in *Bueno,*

for H & R has not even delivered documents—or anything else, for that matter—into the District. Unlike the defendant in *Shoppers Food Warehouse, supra,* 746 A.2d at 330–32, H & R has not advertised its citric acid (or any other product) in the District. Further, H & R has not sold its goods to anyone in the District, for none of its customers was located here. So, too, H & R did not itself produce or distribute any product containing citric acid which may have been purchased by Holder or by other members of the plaintiff class. *Cf. Cohane, supra,* 385 A.2d at 159. Rather, if citric acid manufactured by H & R wound up in the District at all, this was solely the result of "the unilateral activity of another party or a third person," namely that of H & R's own customers and other persons or entities further down the chain of distribution. *Sol Salins, supra,* 510 A.2d at 1035 (citation and quotation marks omitted). Any resulting contacts between H & R and the District were therefore "fortuitous or accidental," and they did not "manifest a deliberate and voluntary association with the forum" on H & R's part. *Mouzavires, supra,* 434 A.2d at 995, 997. For the foregoing reasons, these contacts were insufficient under section 13–423(a)(1) to confer on the Superior Court personal jurisdiction over H & R.

 Holder argues that we should consider H & R's intentional criminal violation of the Sherman Act in our "transacting business" calculus. He asserts that H & R's criminal conduct caused injury to him and to others similarly situated because residents of the District had to pay artificially and unlawfully inflated prices for consumer goods containing citric acid. But in the absence of any significant connection between H & R and the District, extraterritorial participation in a criminal conspiracy, however culpable, cannot fairly be characterized as "transacting any busi-

ness in the District of Columbia." D.C.Code § 13–423(a)(1).[10] Indeed, on this record, H & R's participation in criminal conduct, for which sanctions have already been imposed by a United States District Court in California, is essentially irrelevant to the question whether the Superior Court of the District of Columbia may exercise personal jurisdiction over H & R pursuant to section 13–423(a)(1). Compare *supra* note 8.

■ Finally, our long-arm statute's "transacting business" prong does not confer personal jurisdiction over H & R on the Superior Court because H & R could not reasonably have foreseen that its production and delivery scheme would subject it to being haled into court in the District. "[T]he Due Process Clause 'does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.'" *World–Wide Volkswagen, supra,* 444 U.S. at 294, 100 S.Ct. 559 (quoting *Int'l Shoe, supra,* 326 U.S. at 319, 66 S.Ct. 154). It is true that the applicable Supreme Court precedent ultimately focuses on foreseeability, but the foreseeability relevant to the personal jurisdiction analysis "is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *E.g., id.* at 297, 100 S.Ct. 559. The Court has gone on to explain that a defendant may reasonably anticipate being required to defend itself in a forum where it has made "efforts … to serve, directly or indirectly, the market for its product" and has thus "purposefully avail[ed] itself of the privilege of conduct-

ing activities within the forum State." *Id.* at 297, 100 S.Ct. 559. Moreover, mere foreseeability alone is not enough for, if it were, then, as the Supreme Court noted in *World–Wide Volkswagen, supra,* 444 U.S. at 296, 100 S.Ct. 559, any chattel sold by a defendant would become his designated agent for service of process, and H & R would therefore be subject to suit on a transaction of business theory wherever any amount of its citric acid might ultimately be transported by some third party.

■ The constitutional standard, then, is not satisfied through "the mere likelihood that a product will find its way into the forum State," without any other relevant contacts between the defendant and the forum. *Id.* at 297, 100 S.Ct. 559. The Supreme Court has held, on the other hand, that a nonresident defendant could reasonably foresee that it would be haled into court in a state in which it had sold 10,000–15,000 copies of its product each month. *Keeton, supra,* 465 U.S. at 772, 773–74, 104 S.Ct. 1473. As the Court aptly observed, "[s]uch regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous." *Id.* at 774, 104 S.Ct. 1473 (citation omitted). Rather, these activities were "purposefully directed" at the forum state. *Id.*

Holder asks us to hold, on the authority of *Keeton* and like cases, that the Superior Court may exercise jurisdiction over H & R. But Holder's reliance on *Keeton* is misplaced. The result in *Keeton* was premised on the obvious reality that, with many thousands of sales in New Hampshire, the business contacts between the defendant

---

10. The District's long-arm statute, unlike the statutes of certain jurisdictions involved in cases upon which Holder relies, does not contain a provision under which the in-state commission of a tort is defined as "doing busi-

ness" in the forum. *See, e.g., Keeton, supra,* 465 U.S. at 774 n. 4, 104 S.Ct. 1473 (citing such a provision in New Hampshire long-arm statute).

and the forum were sufficiently consistent and deliberate to satisfy due process requirements. 465 U.S. at 773–75, 104 S.Ct. 1473. H & R had no comparable contacts with the District. See pp. 12–16, *supra.*[11]

H & R's relationship to the forum in this case is far more similar to the circumstances in *World–Wide Volkswagen,* 100 S.Ct. 559 than it is to the situation presented in *Keeton.* Unlike Hustler Magazine, H & R has made no specific "efforts ... to serve ... the market for its product" in the District of Columbia, either directly or indirectly. *World–Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. 559. Rather, it served the citric acid market where it existed, that is, where H & R's customers were located—and none of its customers was located in the District.[12] Assuming that H & R's product eventually reached the District, it did not arrive, as in, *e.g., Keeton,* in its original or unadulterated form, but, on the contrary, as a rather minor component of various consumer products. In fact, a trier of fact might well be reduced to speculation as to whether the citric acid contained in any particular item that was ultimately sold to a consumer in the District was manufactured by H & R. With its connection to the District so tenuous, we cannot say that H & R "should reasonably [have] anticipate[d] being haled into court" in this jurisdiction. *World–Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. 559; *see also Keeton, supra,* 465 U.S. at 781, 104 S.Ct. 1473; *Stabilisierungsfonds, supra,* 207 U.S.App. D.C. at 380–81, 647 F.2d at 205–06. The allegations in the complaint, if true, would not establish that H & R "has purposefully directed its activities at residents of the forum." *Shoppers Food Warehouse, supra,* 746 A.2d at 331 (citation, alteration, and quotation marks omitted); *see also, e.g., Burger King, supra,* 471 U.S. at 475, 105 S.Ct. 2174. Consequently, it would "offend traditional notions of fair play and substantial justice," *Int'l Shoe, supra,* 326 U.S. at 316, 66 S.Ct. 154 (citation and quotation marks omitted)—or, in the words of the trial judge here, it would not be "fair, just and legal"—for the Superior Court to exercise personal jurisdiction over H & R.[13]

11. We also note that New Hampshire, the forum at issue in *Keeton,* had a long-arm statute under which the in-state commission of a tort was defined as "doing business" in the forum. 465 U.S. at 774 n. 4, 104 S.Ct. 1473. The District has no such statute. Furthermore, the Court concluded that the libel at issue in *Keeton* was a tort that occurred at least partially in the forum, 465 U.S. at 776, 104 S.Ct. 1473, and the requirement that the nonresident defendant transact business in the forum was therefore doubly satisfied. But see *supra* pp. 272–274.

12. The only specific location disclosed in the record at which H & R sold its citric acid is "the Northern District of California." However, the affidavit of H & R's corporate secretary specifically states that "none of [H & R's citric acid customers was] located in D.C."

13. Holder also argues that the Superior Court should be permitted to exercise personal jurisdiction over H & R because, according to Holder, the District's Antitrust Act was intended to reach a defendant's activity outside the District so long as that activity had a significant effect within the District. Assuming, *arguendo,* that this was the legislative intent, we believe that it would put the cart before the horse to conclude that the entire constitutionally-mandated minimum contacts analysis may simply be jettisoned whenever a legislature enacts a statute which is intended to have extraterritorial application. On the contrary, we emphasize that the personal jurisdiction analysis must precede, and proceed independently of, the question whether a substantive District of Columbia statute has been violated. *See Keeton, supra,* 465 U.S. at 778, 104 S.Ct. 1473 (explaining that the question of "the applicability of [a forum statute] presents itself in the course of litigation only after jurisdiction over [the nonresident defendant] is established").

## IV.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is *Affirmed.*