Alicia M. ETCHEBARNE–BOURDIN, et al., Appellants,

v.

Luis C. RADICE, et al., Appellees.

No. 05–CV–1059.

District of Columbia Court of Appeals.

Argued April 4, 2007.
Decided Oct. 22, 2009.

Richard W. Balsamo for appellants.

Heather N. Ellison, with whom Paul T. Walkinshaw, of the Virginia Bar, pro hac vice, and Richard L. Nagle were on the brief, for appellees.

Before RUIZ and BLACKBURNE–RIGSBY, Associate Judges, and SCHWELB, Senior Judge.

RUIZ, Associate Judge:

This case, now before us for a second time, requires us to interpret the District of Columbia's "long-arm" statute, D.C.Code § 13–423 (2001). The issues before us concern two subsections of the statute which authorize District of Columbia courts to exercise jurisdiction over non-resident defendants who "transact[ ] any business" in the District of Columbia, D.C.Code § 13–423(a)(*l* ); or who "caus[e] tortious injury in the District of Columbia by an act or omission outside of the District of Columbia if [they] regularly do[ ] or solicit[ ] business, engage[ ] in any other persistent course of conduct, or derive[ ] substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." *Id.* at § (a)(4). When the conduct of a defendant satisfies either one of these sections, the court may exercise personal jurisdiction only if "a claim for relief aris[es] from acts enumerated in [the statute]." *Id.* at § (b). Specifically, we address for the first time whether all of the requirements set out in

subsection (a)(4) must be linked to the claim for relief in a particular case, to permit the exercise of personal jurisdiction. We hold that the nexus requirement under subsection (b), as applied to the basis for jurisdiction set out in subsection (a)(4), does not require that the claim arise from what we consider to be independent "plus factors." These factors (e.g., a "persistent course of conduct" in the District of Columbia), are required for the purpose of ensuring that exercising jurisdiction over a defendant where the claim for relief is based on conduct outside the forum comports with due process. Because the trial court thought otherwise, and on the basis that there was no nexus between the defendant's persistent course of conduct in the District and the medical malpractice action, dismissed the complaint for lack of jurisdiction over appellees, we reverse the judgment and remand the case for further proceedings.

## I. Factual Background

This action arises from a complaint for medical malpractice filed by appellants, Alicia Etchebarne–Bourdin and, her husband, Mauricio Bourdin. They claim that appellees, Drs. Luis Radice and Edward Gahres, and their practice, Gahres and Radice, M.D.s, Ltd., provided negligent medical care to Ms. Etchebarne–Bourdin that resulted in the death *en ventre sa mere* of her unborn child.

The facts of the case relevant to the question of jurisdiction are, for the most part, undisputed. At the time of the complaint, appellants were both domiciled in Virginia, and worked at the International

Monetary Fund ("IMF"), located in the District. In 1990, Ms. Etchebarne–Bourdin became Dr. Radice's patient. Although Dr. Radice was listed in a directory of local physicians made available at the IMF Health Center, Ms. Etchebarne–Bourdin did not consult the directory in choosing Dr. Radice as her physician; rather, she was referred to the doctor by her sister, who had been his patient in the past.

Drs. Radice and Gahres specialized in obstetrics and gynecology and their office was located in Virginia at the time Ms. Etchebarne–Bourdin became their patient. Their practice, Gahres and Radice M.D.s, Ltd., is a Virginia professional corporation. The doctors had maintained a practice in the District of Columbia, from 1970 until 1988, two years before Ms. Etchebarne–Bourdin became their patient. In 1988, the doctors, at the urging of their medical malpractice insurance carrier, closed their office in the District and relinquished their admitting privileges at D.C. hospitals.

Even after they moved their office to Virginia, the doctors maintained ties to the District of Columbia. The doctors are individually licensed in the District as well as in Virginia. They maintained a listing for their office, with their Virginia address, in the District of Columbia Yellow Pages. The doctors regularly attended Grand Rounds of George Washington University Hospital—more than once a month—and were members and attended meetings of the Washington Gynecological Society, which met in the District of Columbia approximately eight times a year.[1] The trial court found that 5.5% of the doctors' patients were residents of the District.[2]

1. The trial court found that the doctors attended the meetings at Washington Gynecological Society and Grand Rounds at George Washington University Medical Center to continue their medical education. According to the trial court's order on remand, "it appears

that Grand Rounds involved reviewing case histories of patients, as well as topics related to the practice of gynecology and obstetrics."

2. In their brief on appeal, appellants offered additional facts relating to the doctors' con-

On October 29, 1990, while driving in the IMF parking lot in the District, appellants were "rear-ended" in an automobile collision. Ms. Etchebarne–Bourdin was then seven months pregnant. Later that day, Ms. Etchebarne–Bourdin telephoned Dr. Radice's office in Virginia from her office at the IMF in the District. She explained what had happened to the receptionist who answered the telephone; the receptionist advised her to keep her regular appointment on November 2nd, four days later.[3]

According to appellants' complaint, at her next two appointments, on November 2nd and November 9th, Ms. Etchebarne–Bourdin complained to Dr. Radice that she continued to feel general discomfort and expressed concern of "decreased intrauterine movement." No tests were conducted at either visit, but at both times she was assured that nothing was wrong. On November 9th, Dr. Gahres ascribed Ms. Etchebarne–Bourdin's complaints to the fact that "you women all get crazy during your last weeks of pregnancy."

On November 16, 1990, Ms. Etchebarne–Bourdin felt pain and had an unusual vaginal discharge. She immediately went to appellees' office for an examination. During the examination, Dr. Radice could not detect any fetal movement. He rushed her to Alexandria Hospital, where he delivered a still-born baby.

Appellants filed a complaint in D.C. Superior Court for medical malpractice. They alleged that appellees breached the standard of care by failing to advise Ms. Etchebarne–Bourdin, after she notified them that she had been in a car accident, that she should be examined immediately for signs of fetomaternal injury and that they failed to do so during her office visits. As appointed legal representatives of the child's estate, appellants brought a survival action under D.C.Code § 12–101 (1981), seeking damages in the amount of $12,003,500, reflecting $12 million for the estate of the child had she lived her expected life span, and $3,500 for medical and funeral expense. Appellants also claimed on their own behalf. In connection with that claim, appellants sought combined damages of $6 million: $4 million for Ms. Etchebarne–Bourdin's physical injury, emotional distress, and loss of wages, and $2 million for her husband's loss of consortium. Appellees moved to dismiss for lack of jurisdiction under Superior Court Civil Rule 12(b)(2), or, in the alternative, on the grounds of *forum non conveniens*. The trial court granted appellees' motion to dismiss for lack of personal jurisdiction, and did not rule on the alternative motion.

The trial court concluded that it did not have personal jurisdiction over appellees, and granted their motion to dismiss. On appeal, we reversed and remanded the case for renewed consideration in light of our then-recent decision in *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320 (D.C. 2000) (en banc), *cert. denied*, 530 U.S. 1270, 120 S.Ct. 2737, 147 L.Ed.2d 997 (2000). *See Etchebarne–Bourdin v. Radice*, 754 A.2d 322 (D.C.2000) ("*Etchebarne–Bourdin I* ").

On remand, the trial court again dismissed the suit for lack of personal juris-

tacts with the District that they claim the trial court failed to consider. An appellate court will not ordinarily consider facts outside the record. *See Maldonado v. Maldonado*, 631 A.2d 40, 41 n. 1 (D.C.1993) (refusing to consider facts contained in appellee's brief that were not part of the record).

**3.** The doctors' office records showed that Dr. Radice was in the office for part of the day when Ms. Etchebarne–Bourdin called. Although he did not remember directing the receptionist to advise Ms. Etchebarne–Bourdin not to seek immediate medical care, he did not deny that it was possible that he did.

diction, determining that appellees had neither transacted business in the District of Columbia within the meaning of subsection (a)(1) of the long-arm statute, nor did their "persistent course of conduct" in the District sufficiently relate to appellant's claimed injury, as the trial court interpreted subsection (a)(4) to require. We agree with the trial court's analysis that appellees did not "transact business" under D.C.Code § 13–423(a)(1), but conclude that the trial court erred in its analysis of the nexus required by subsection (a)(4). We, therefore, reverse and remand the case for further proceedings.

## II. Analysis

■ When reviewing an order of dismissal for lack of personal jurisdiction where there has not been an evidentiary hearing, the court "must resolve in ... favor of [the party asserting jurisdiction] all disputes concerning relevant facts presented in the record." *Reuber v. United States,* 242 U.S.App. D.C. 370, 383, 750 F.2d 1039, 1052 (1984) (quoting *Nelson v. Park Industries, Inc.,* 717 F.2d 1120, 1123 (7th Cir.1983)). *See* Super Ct. Civ. R. 12(c) (providing that motion for judgment on the pleadings is converted to motion for summary judgment if "matters outside pleadings are presented to and not excluded by" the trial court). We review *de novo* the trial court's dismissal of a complaint for "lack of jurisdiction over the person" under Rule 12(b)(2). *See Holder v. Haarmann & Reimer Corp.,* 779 A.2d 264, 269 (D.C.2001).

### A. *The Long Arm Statute's Requirements*

The District of Columbia's long arm statute provides as follows:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5) having an interest in, using, or possessing real property in the District of Columbia;

(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or

(7) marital or parent and child relationship in the District of Columbia ... [under certain conditions; this subsection is not relevant to this case]

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C.Code § 13–423 (2001).

To assert personal jurisdiction under § 13–423, the statute sets out two separate requirements: first, the defendant must have engaged in one of seven enumerated activities, *id.* at § (a), and, second, "[the] claim for relief [must] aris[e] from acts enumerated" in the statute. *Id.* at § (b).

In this case, two of the enumerated acts are at issue: whether appellees "transact[ed] any business in the District of Columbia," *id.* at § (a)(1), and whether they "caus[ed] tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [they] . . . engage[ ] in any other persistent course of conduct . . . in the District of Columbia." *Id.* at § (a)(4).

In a long and detailed order, the trial court considered four contacts by the doctors with the District of Columbia: (1) Ms. Etchebarne–Bourdin's telephone call to appellees from the District on October 29, 1990; (2) the District of Columbia medical licenses held by Drs. Gahres and Radice; (3) the listing for the doctors' Virginia practice in the District of Columbia Yellow Pages, as well as Dr. Radice's listing in a referral list at the IMF Health Center (in the District); and (4) the doctors' periodic attendance at meetings of the Washington Gynecological Society and Grand Rounds at George Washington University Medical Center, all of which took place in the District of Columbia. The trial court determined that, whether viewed individually or in the aggregate, appellees' contacts with the District did not constitute "transacting any business" under the statute, and that, even assuming they did, appellants' claim did not "aris[e] from" those business transactions. *See* D.C.Code § 13–423(b). Similarly, the trial court determined that even though the doctors' attendance at Grand Rounds and Society meetings constituted a "persistent course of conduct" under D.C.Code § 13–423(a)(4), this conduct, also, failed to satisfy the "aris[e] from" requirement of the statute. *Id.* at § (b).

**B.** *"Transacting any business," D.C.Code § 13–423(a)(1)*

We have held that "the sweep of the 'transacting any business' provision [of the District's long-arm statute] covers *any transaction of business in the District of Columbia* that can be reached jurisdictionally without offending the Due Process Clause." *Holder,* 779 A.2d at 270 (quoting *Mouzavires v. Baxter,* 434 A.2d 988, 993 (D.C.1981) (en banc) (per curiam)).

By equating the "transacting business" requirement with what is permissible under the Due Process Clause, we have required that plaintiff show only that the defendant has had "minimum contacts" with the forum—"purposeful, affirmative activities within the District of Columbia,"—so that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Shoppers,* 746 A.2d at 330–31 (citations omitted). Therefore, in order to demonstrate that appellees "transacted business" within the meaning of the statute, appellees must be "purposefully engaged in some type of . . . activity directed at District residents." *Holder,* 779 A.2d at 270–71 (citing *Shoppers,* 746 A.2d at 330–31).

Applying this standard, we agree with the trial court that the telephone call that Ms. Etchebarne–Bourdin placed to appellees' office on October 29, 1990, cannot—consistent with the limits of due process—serve as a basis for jurisdiction. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (holding that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").[4] *Cf.*

4. Appellants argue on appeal that appellees should have foreseen that some of their patients would call from the District, pointing to Dr. Radice's admission at his deposition that other patients called to ask to have their prescriptions filled, and that he had placed calls to pharmacies in the District. We need not consider this argument as it is raised for the

D.C.Code § 13–423(a)(4), discussed *infra*, Part II A.

◼ Likewise, that the doctors maintained medical licenses to practice in the District cannot, without more, serve as a basis for jurisdiction under the "transacting any business" subsection of the statute. *See Ghanem v. Kay*, 624 F.Supp. 23, 25 (D.D.C.1984) ("[I]t is actual practice of a profession ... and not the possession of the right to practice that brings a person within the jurisdiction of a ... court.") (quoting *Lebkuecher v. Loquasto*, 255 Pa.Super. 608, 389 A.2d 143, 145 (1978)). Appellants' reliance on *Presbyterian Univ. Hosp. v. Wilson*, 337 Md. 541, 654 A.2d 1324 (1995), for the proposition that by submitting themselves to the licensing process, the doctors were manifesting a deliberate and voluntary association with the forum is misplaced. In *Presbyterian*, the Maryland Court of Appeals exercised personal jurisdiction over a hospital located in Pennsylvania because the hospital (1) had purposefully availed itself of Maryland's laws by actively registering as a healthcare provider with a state-run program that provided indigent healthcare; (2) was the only approved adult liver transplant center for patients of that Maryland program; and (3) solicited Maryland residents to seek treatment at the hospital.[5] *See Presbyterian*, 654 A.2d at 1331–32. Here, by contrast, there is no allegation that the doctors maintained their D.C. licenses in order to solicit patients in the District.

◼ Appellants claim that the doctors' regular attendance at periodic meetings of the Washington Gynecological Society and Grand Rounds at George Washington University Hospital constituted "transacting business" in the District for purposes of the long-arm statute. We agree with the trial court that these activities, which were primarily for continuing professional education, fall outside the meaning of "transacting business."[6] Even if we accept appellants' assertion that the training and continuing medical education that the doctors received served to some extent to attract patients, including those residing in the District of Columbia, appellants' malpractice actions cannot be said to "arise from" the doctor's attendance at these meetings.

◼ Appellees' listings in the District of Columbia Yellow Pages and at the IMF Satellite Unit as a healthcare provider present a closer issue. As an initial matter, we do not agree with the trial court's conclusion that "there is no indication that [the Yellow Pages or IMF listings] were designed to, or particularly likely to, attract District of Columbia residents." To the contrary, the District of Columbia Yellow Pages, by their very design, are intended to reach District residents. The listing of Dr. Radice at the IMF as a healthcare provider, on the other hand, was not specifically designed to reach District residents as much as to be a resource to all employees, wherever they live.

---

first time on appeal. *See, e.g., Hunter v. United States*, 606 A.2d 139, 144 (D.C.1992) ("[P]oints not asserted with sufficient precision [at the trial court level] to indicate distinctly the party's thesis will normally be spurned on appeal." (quoting *Miller v. Avirom*, 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967))).

5. In *Presbyterian*, the Pennsylvania hospital applied to the Maryland Department of Health & Mental Hygiene to be certified as a Medicaid provider to Maryland residents. 654 A.2d at 1331.

6. These activities did serve, however, as the basis for the trial court's conclusion that appellees engaged in a "persistent course of conduct." See *infra*, Part II C.

But unlike the "extensive" weekly full-page newspaper advertisement in *The Washington Post* we considered in *Shoppers Food Warehouse,* 746 A.2d at 330, appellees' entry in the Yellow Pages is simply a listing, with only the names of the doctors, their address and phone number in Virginia, and their medical specialty.[7] Dr. Radice's listing at the IMF contained similar biographical and contact information, and, even though the directory was located at the IMF's health unit in the District, it did not reach out to solicit patients who lived in the District of Columbia, rather than persons who worked at the IMF. The scale and scope of the doctors' advertising, in other words, did not rise to the level of active solicitation of patients in the District we deemed significant in *Shoppers;* Ms. Etchebarne–Bourdin herself did not select Dr. Radice from either of these sources, but on her sister's recommendation. *See Ghanem,* 624 F.Supp. at 25 n. 6 ("[W]here the physician has not aggressively sought patients in the forum and the plaintiff did not consult defendant as a result of forum activities by the defendant …, possession of a license (and a listing in the forum jurisdiction's phone book) without practicing in the forum is not sufficient to meet the due process requirements that limit jurisdiction under all long-arm statutes."). The limited reach of appellees' "advertising" activities is underscored by the fact that although they were located within the Washington metropolitan area, only 5.5% of appellees' patients were District residents. *Cf.*

*Shoppers Food Warehouse,* 746 A.2d at 332 ("The Metropolitan Washington, D.C. area functions, in many respects, as a unified legal and commercial community. Consequently, 'when out-of-state actors avail themselves of the benefits of contact within the forum jurisdiction,' … 'fairness requires that they be held accountable therein for the consequences of such activities.'"). Since appellees did not actively solicit patients in the District, but rather maintained passive listings of contact information, it would be unfair to infer that Drs. Gahres and Radice should have anticipated being subject to suit in the District of Columbia as a result of having their contact information in Virginia listed here.

We therefore agree with the trial court that appellees did not "transact business" in the District of Columbia for purposes of D.C.Code § 13–423(a)(*l*).

C. *Causing tortious injury in D.C. and "Persistent course of conduct," D.C.Code § 13–423(a)(4)*

When we remanded the case in *Etchebarne–Bourdin I,* we directed the trial court that, in the event it did not find jurisdiction under subsection (a)(1), it should "reevaluate whether the defendants caused 'tortious injury in the District' resulting from 'an act or omission outside the District,' in the context of the 'nexus' requirement as articulated in *Shoppers Food Warehouse,* which applies equally to all subsections of section 13–423(a)." 754

---

7. In contrast, in *Shoppers Food Warehouse,* we described the advertisement as being targeted to District consumers:

> The body of the ads contained a description of the product for sale in bold letters with the price, and sometimes with a picture of the sale item. At the top of the ad some additional inducement to shop at Shoppers

appeared…. In the middle of one of the pages … Shoppers stated in bold letters: **"No Matter Where You Live … It's Worth The Drive!"** … The record before us reveals that Shoppers also placed advertisements on television networks in the District, as well as listed one of its stores in the Yellow Pages….

746 A.2d at 330.

A.2d at 327. In its first order dismissing the case, the trial court had found that for purposes of subsection (a)(4), appellees had engaged in a "persistent course of conduct" in the District of Columbia based on their participation in Grand Rounds at GWU Hospital and attendance at meetings of the Washington Gynecological Society. *Etchebarne-Bourdin I*, 754 A.2d at 326. Appellees did not contest that determination before the trial court on remand (nor do they do so on appeal). The trial court maintained this determination in its order on remand, but interpreted the statute as requiring that there must be a sufficient connection between the claim made by appellants in their lawsuit and appellees' persistent course of conduct in the District. We disagree with the trial court and conclude that where the tortious act is alleged to have caused injury in the District of Columbia, and the claim arises from such act and injury, no additional nexus need be shown between the claim and the persistent course of conduct.

The pertinent sections of the District of Columbia long-arm statute, D.C.Code § 13–423, provide:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's ... (4) *causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct,* or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

. . . .

(b) When jurisdiction over a person is based solely upon this section, *only a claim for relief arising from acts enumerated in this section may be asserted against him.*

D.C.Code § 13–423(a)(4), (b) (2001) (emphasis added).

By its plain language, subsection (a)(4) contemplates that personal jurisdiction can be exercised for "a claim for relief [that] aris[es] from the person's ... causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia ...." *Id.* at § (a)(4). Subsection (a)(4) further requires that jurisdiction can be exercised over appellees only if they also have an additional contact with the District, in this case, if they "engage[ ] in any other persistent conduct ... in the District of Columbia." *Id.*

There is no doubt that appellants' claims arose out of the doctors' allegedly tortious acts or omissions in Virginia, which are alleged to have caused injury to Ms. Etchebarne-Bourdin in the District.[8] But

---

**8.** In *Etchebarne-Bourdin I*, we stated that "[t]o the extent that the pregnancy began to be imperiled at the time as a result of the unmonitored and untreated physical impact on October 29, 1990, Ms. Bourdin's original injury occurred while she was in the District of Columbia." 754 A.2d at 327–28. We explained this was because "the triggering event, the automobile collision, occurred in the District of Columbia, and that the first time that the *doctors were negligent* arguably was when they failed to advise her properly when she called them from the District." *Id.* at 327 (emphasis added). We based this inference on the guidelines that appellees' med-ical practice had in place at the time the seven-months-pregnant Ms. Etchebarne-Bourdin called to say she had been in a car accident. The doctors' office guidelines for screening telephone calls provide that "[i]f an OB patient is involved in an accident or injured in any way, she must be examined in an emergency room or our office immediately." These instructions suggest that if a patient is not seen immediately after an accident, there is a possibility that the fetus or the pregnant woman might suffer some injury.

The trial court accepted our analysis on remand, and appellees did not contend other-

subsection (b) of the long-arm statute also appears to require an independent "nexus requirement," and provides that "only a claim for relief arising from acts enumerated in this section may be asserted against [defendant]." The issue before us is whether, specifically in connection with jurisdiction grounded on subsection (a)(4), the "acts enumerated" that are referred to in subsection (b) for which a nexus must be shown are the acts "causing tortious injury in the District of Columbia," or also include the further limiting requirements, such as "engag[ing] in any other persistent conduct . . . in the District of Columbia." *Id.* at § (a)(4). As we explain below, we conclude that, for purposes of subsection (a)(4), subsection (b)'s nexus requirement is subsumed in the requirement that the "claim for relief aris[e]" from an act or omission outside the forum that "caus[es] tortious injury in the District of Columbia." D.C.Code § 13–423(a)(3).

Although the language of the statute could be read literally to require a further nexus with the claim, we think it would be redundant when a direct link is already established between the tortious conduct outside the District and the resulting injury within the jurisdiction on which the claim is based. As we have observed with respect to personal jurisdiction grounded on "transacting business" under § 13–423(a)(1), "[t]he limitation in § 13–423(b) that the claim for relief must arise from the transaction of business in the District of Columbia is meant to prevent the assertion of claims in the forum state that do not bear some relationship to the acts in the forum stated relied upon to confer jurisdiction." *Cohane v. Arpeja–California, Inc.*, 385 A.2d 153, 158 (D.C.1978) (citation omitted). This narrow reading of subsection (b)'s nexus requirement as a due process safeguard is consistent with "Congress's intent to provide the District of Columbia with a long arm statute equivalent in scope to those already in effect in Maryland and Virginia," the courts of which had interpreted their statutes to "permit the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution." *Envtl. Research Int'l Inc. v. Lockwood Greene Eng'r, Inc.*, 355 A.2d 808, 810–11 (D.C. 1976).

The provenance of the District's long-arm statute also informs our understanding that the additional activities listed in subsection (a)(4) are "plus factors" intended to ensure that there are minimum contacts with the forum sufficient to satisfy due process concerns. The District of Columbia's long-arm statute is modeled after the Uniform Interstate and International Procedure Act. *See Cohane*, 385 A.2d at 159 (citing *Founding Church of Scientology, Etc. v. Verlag*, 175 U.S.App. D.C. 402, 405, 536 F.2d 429, 432 (1976)). The Commissioners' Note accompanying subsection (a)(4) of the uniform act states that it "authorizes the exercise of jurisdiction when the tortious act or omission takes place without the state but the injury occurs within the state and there is *some other reasonable connection between the state and the defendant.*" 9B U.L.A. 310 (1966) (Commissioners' Note), *quoted in Margoles v. Johns*, 157 U.S.App. D.C. 209, 213, 483 F.2d 1212, 1216 (1973) (emphasis added). In drafting the uniform act, it was the Commissioners' intent to "require [ ] something more than the in-forum impact at issue in the litigation, to exclude cases in which that impact is an isolated

---

wise on remand nor have they done so on appeal. But even if they had, this would be a disputed fact that would have to be resolved

in favor of appellants. *See Reuber*, 242 U.S.App. D.C. at 383, 750 F.2d at 1052.

event and the defendant otherwise has no, or scant, affiliations with the forum." *Steinberg v. Int'l Criminal Police Org.*, 217 U.S.App. D.C. 365, 369, 672 F.2d 927, 931 (1981) (citing 13 U.L.A. at 468–69 (1980) (Commissioners' Comment)); *see Founding Church of Scientology*, 175 U.S.App. D.C. at 405, 536 F.2d at 432.

■ In *Crane v. Carr*, 259 U.S.App. D.C. 229, 814 F.2d 758 (1987), a case in which a District resident brought libel and "false light" actions against the New York Zoological Society ("NYZS") for allegedly defaming him in a letter, the court reversed the trial court's dismissal of a suit against NYZS for lack of personal jurisdiction. *Id.* at 234–35, 814 F.2d at 763–64. The court held that the "persistent course of conduct" or "plus factor" required by subsection (a)(4) of the D.C. long-arm statute need not be related to the claim. *Id.* at 234, 814 F.2d at 763. Noting that NYZS' letter, sent to Belize, was the allegedly tortious act outside the District that caused injury to the plaintiff who resided in the District,[9] the court remanded the case to allow discovery on the extent of NYZS' contacts with the District. *See id.* at 235, 814 F.2d at 764. In doing so, then-Judge Ruth Bader Ginsburg noted:

> To recapitulate, under (a)(4), the act outside/ *impact inside* the forum is the basis for drawing the case into the court, but because the harm-generating act (or omission) occurred outside, the statute calls for something more. The "something more" or "plus factor" does not itself supply the basis for the assertion

of jurisdiction, but it does serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum.

*Id.* at 234, 814 F.2d at 763.[10]

■ We agree with and adopt the court's analysis in *Crane*. The enumerated acts, from which the claim must "arise," D.C.Code § 13–423(b), are the specific acts (e.g., transacting business, contracting to supply services, having an interest in real property) or impact in the forum (causing tortious injury) that could result in an individual being subject to personal jurisdiction in our courts. The claim need not arise, however, from the "plus factors" that are imposed by subsection (a)(4) on those claim-related acts or omissions. They are an additional due process safeguard, such as the requirement of "persistent course of conduct," to ensure that the party being haled into this jurisdiction's courts has more than a "scant" connection to the forum. *Id.* A useful comparison is provided by subsection (a)(3), which establishes personal jurisdiction over a non-resident defendant if both the tortious act and the injury occur in the District. In such a situation, the statute does not require additional "plus factors" to meet the due process minimum contacts requirement.

■ Applying the correct interpretation of D.C.Code § 13–423(a)(4), that we now announce, the trial court had personal jurisdiction over appellees to consider appellants' claims of medical malpractice for

---

**9.** In defamation actions, the injury is deemed to occur where the defamed person is located. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

**10.** *See also Steinberg*, 217 U.S.App. D.C. at 369, 672 F.2d at 931 (interpreting D.C.Code § 13–423, and reversing the trial court's order dismissing the case for lack of personal

jurisdiction where plaintiff alleging defamation resided in, and claimed injury in, the District, reasoning that while Interpol's regular transmissions from France to U.S. government offices in the District did "not add up to 'doing business' here, [they] suffice[d] to supply the 'something more' subsection (a)(4) requires").

injury suffered in the District of Columbia as a result of an allegedly tortious act or omission outside this forum.

We reverse the judgment of the trial court dismissing the action for lack of personal jurisdiction over appellees and remand the case for further proceedings consistent with this opinion.

*So ordered.*