Alicia M. ETCHEBARNE–BOURDIN, et al., Appellants,

v.

Luis C. RADICE, M.D., et al., Appellees.

Nos. 96–CV–674, 96–CV–1277.

District of Columbia Court of Appeals.

Argued Jan. 26, 1998.

Decided June 1, 2000.

Richard W. Balsamo, for appellants.

Judith B. Henry, with whom Robin M. Vogel, Richmond, VA, John A. Blazer, Fairfax, VA, and Christine S. Yehle were on the brief, for appellees.

Before STEADMAN *, RUIZ and REID, Associate Judges.

RUIZ, Associate Judge:

This appeal raises the issue of the trial court's jurisdiction pursuant to D.C.Code

* Judge STEADMAN concurs in the result.

§ 13–423(a)(1) (1995 Repl.), which provides personal jurisdiction over a person who "transacts any business in the District of Columbia," and section 13–423(a)(4), which provides personal jurisdiction over a person "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [the person] regularly does or solicits business, [or] engages in any other persistent course of conduct ... in the District of Columbia." To assert personal jurisdiction under these subsections, the claim asserted must "aris[e] from" either the "transact[ion][of] business" or a "persistent course of conduct" in the District of Columbia. *See* D.C.Code § 13–423(b) ("When jurisdiction over a person is based solely upon [D.C.Code § 13–423(a)], only a claim for relief arising from acts enumerated in this section may be asserted against him.")

In this case against two individual doctors who practice in Virginia and their medical practice firm, a Virginia professional corporation, the trial court concluded that whereas the individual doctors engaged in a "persistent course of conduct" in the District of Columbia, the court lacked personal jurisdiction because they did not "cause[ ] tortious injury" here as required by section 13–423(a)(4). The trial court also concluded that whereas the individual doctors "transacted business" in the District, the plaintiff's claims did not "arise from" the defendants' business transactions in the District. We remand the case for the trial court's reconsideration of the issues in light of our recent opinion in *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320 (D.C.2000).

## I.

Plaintiffs-appellants, Alicia Etchebarne–Bourdin and Mauricio Bourdin, Baby Girl Bourdin ("Stephanie Bourdin"), and the Estate of Stephanie Bourdin, filed suit against defendants-appellees, Dr. Luis Radice and Dr. Edward Gahres and Gahres and Radice, M.D.s, Ltd., a Virginia professional corporation ("G & R"). Their complaint alleges two counts. In Count I, the parents, as the appointed legal representatives of the child's estate, bring a survival action under D.C.Code § 12–101 (1995 Repl.), alleging that the negligent acts of defendants caused the death *en ventre sa mere* of Stephanie, who otherwise would have been born a healthy, normal and productive child. Count I claims damages in the amount of $12 million as the present value of the amount that Stephanie would have accumulated if she had lived out her life expectancy of 72 years, and $3500 in medical and funeral expenses charged to the estate.

Count II is an action for medical malpractice in which plaintiffs allege that defendants breached their duty of care by failing to inform Ms. Bourdin, after she notified them that she had been in a car accident, that she should be monitored for signs of fetomaternal injury. The mother claims damages in the amount of $4 million for injuries she sustained as a result of the defendants' negligent acts. The father demands $2 million for what is, in essence, a claim for the loss of his wife's consortium.

In response to the plaintiffs' complaint, defendants filed a motion to dismiss for lack of jurisdiction, or, in the alternative, for forum non conveniens. After extensive pleadings and an oral argument on the motion, the trial court issued a 60–page Summary Judgment Order granting summary judgment to all the defendants solely on the ground of lack of personal jurisdiction.[1] Shortly after the court issued its Summary Judgment Order, defendants' counsel suggested to the trial court that the proper disposition was dismissal, not summary judgment. The trial court agreed, and subsequently issued a 62–page Amended Order, dismissing the complaint for lack of personal jurisdiction. The parties agree that the Amended Order is substantially identical to the prior Summary Judgment Order, with the exception of one

---

1. The court did not reach the issue of forum non conveniens.

additional footnote (note seven) and a revision of its discussion of the plaintiff's burden of proof. Appellants do not challenge the procedural modification of the order and note that, in effect, this court now has before it a single appeal from the trial court's final Amended Order dismissing the complaint for lack of personal jurisdiction over the defendants.

## II.

The facts of the underlying case related to the question of personal jurisdiction are, for the most part, undisputed. The parties disagree over the legal consequences of those facts with respect to personal jurisdiction.

Ms. Bourdin was referred to Dr. Radice by her sister, who previously had been a patient of Dr. Radice when his practice was located in the District of Columbia. At the time of her first appointment with Dr. Radice on May 5, 1990, she was seven-weeks pregnant, with a due date of December 5, 1990.[2] Ms. Bourdin subsequently kept regular pre-natal appointments and her pregnancy continued without complications. At noon on October 29, 1990, Ms. Bourdin was the front-seat passenger in a car that was hit from the rear, as she and Mr. Bourdin exited a parking lot on G Street, N.W., in the District of Columbia. As a result of the impact, she was thrown forward with great force. That same day, Ms. Bourdin complained of severe back and neck pains to her co-workers at the headquarters of the International Monetary Fund ("IMF") in the District of Columbia. One of her co-workers, concerned that the pregnancy might be at risk, advised her to contact the doctor. Ms. Bourdin telephoned Dr. Radice from her office

in the District to his office in Virginia that same afternoon. She spoke to the office receptionist and informed her that she had been in a car accident and was in pain: her neck and hip hurt, her back was "kind of numb," and she had a headache. According to Ms. Bourdin, as she talked on the phone, the receptionist relayed her comments to one of the doctors. When asked whether she was having any vaginal discharge or any contractions other than those usually experienced during the last weeks of pregnancy, Ms. Bourdin answered that she was not. The receptionist advised that she should keep her next regular appointment, scheduled for November 2, 1990.[3]

At the November 2 appointment, Dr. Radice examined Ms. Bourdin and noted the October 29 accident and resulting pain. Ms. Bourdin reported her continuing general discomfort to the doctor and expressed concern that the baby was not moving as much as before. Dr. Radice assured her, telling her not to worry about the health of her baby daughter. He did not conduct a sonogram, blood test or other test to monitor the baby's heart or determine whether there might be fetomaternal hemorrhage. The next day, November 3, Ms. Bourdin experienced some additional distress, but thought she might be having premature contractions, as the doctor had suggested.

At her next appointment, on Friday, November 9, 1990, Dr. Gahres examined Ms. Bourdin. She reported to him that the baby's movements had continued to decrease, the baby's heart rate seemed low and that she was having cramps. Dr. Gahres conducted no tests, and, ascribing the mother's complaints to the fact that "you

**2.** Ms. Bourdin had had three previous pregnancies, from which she had two children; one of the pregnancies resulted in a miscarriage.

**3.** The record shows that Dr. Radice was in the office during part of the day on October 29, 1990. Although in his deposition he could not recall having a conversation with the re-

ceptionist concerning the mother's car accident, he did not deny that he could have had such a conversation. In the Amended Order, the trial court stated that "it finds no evidence that either Dr. Gahres or Dr. Radice so informed Mrs. Bourdin [through the receptionist], nor that either directed Ms. Staursky to so inform Mrs. Bourdin."

women all get crazy during your last weeks of pregnancy," prescribed physical therapy and an anti-acid.

The following Friday morning, November 16, 1990, Ms. Bourdin felt pain and had an unusual vaginal discharge. Believing that her water had broken and that she was going into labor, she contacted the defendants and immediately went to their office. During the examination, Dr. Radice could not detect any fetal movement, so he rushed her to Alexandria Hospital, where she was admitted shortly after noon. Dr. Radice informed her thereafter that the baby was dead. The next day, November 17, 1990, the stillborn baby was delivered, her body decomposed, which, according to the complaint, suggested that she had been dead for a number of days. In the medical records, according to plaintiffs, Dr. Radice notes "No fetal movement × 2 days." [4] An autopsy of the placenta, performed at Alexandria Hospital the same day as the stillbirth, disclosed "massive intervilious hemorrhage" that led to the death of the child in utero.

Also undisputed are the facts surrounding the defendants' medical practice. Drs. Radice and Gahres are physicians specializing in obstetrics and gynecology, whose office is in Virginia. Both doctors reside in Virginia. When the doctors examined Ms. Bourdin, they did so at their office in Virginia. They both are licensed in the District of Columbia as well as in Virginia, and, from 1970 to 1988, had an office in the District. At the urging of their malpractice insurer they closed their District of Columbia office in 1988, gave up their admitting privileges at District hospitals and located their only office in Alexandria, Virginia, where they are actively affiliated with the Alexandria Hospital. Although the doctors are based in Virginia, the trial court found, after an extensive analysis of their contacts with the District of Columbia, that they had engaged in "a persistent course of conduct" in the District, a conclusion that appellees do not challenge on appeal.[5]

The trial court determined, however, that notwithstanding their "persistent course of conduct" in the District, the indi-

---

4. The trial court stated that it could not decipher the word that plaintiffs contend says "movement."

5. The trial court stated:

> [T]he court finds the evidence sufficient to conclude that Dr. Gahres and Dr. Radice, as opposed to G & R, Ltd., have engaged in a persistent course of conduct in D.C. They have been members of the Washington Gynecological Society for many years and have attended meetings six to eight times a year. In addition, in the thirty months for which plaintiffs provided figures, Dr. Gahres attended Grand Rounds fifty-four times and Dr. Radice twenty-two times [in hospitals in the District of Columbia.] Combining their trips into D.C. for Grand Rounds and for meetings of the Washington Gynecological Society, Dr. Gahres would appear to be entering D.C. two to three times a month and Dr. Radice would appear to be entering D.C. between one and two times a month. In *Hughes [v. A.H. Robins Co.,* 490 A.2d 1140 (D.C. 1985)], the Court of Appeals found that the entry into D.C. of A.H. Robins sales representatives every two or three weeks consti-

> tuted "continuous" activity, although not "substantial" enough for the "doing business" test [under D.C.Code § 13–334 (1995 Repl.)]. With that as guidance, the court concludes that Dr. Gahres and Dr. Radice are also engaging in "continuous" D.C. activity of a regular and longstanding nature sufficient to meet the *Parsons [v. Mains,* 580 A.2d 1329 (D.C.1990)] test defining a "persistent course of conduct." Thus, the court concludes that th[e] statutory criteria for a plus factor has been met.

Although it decided that, following the guidance of *Hughes* and *Parsons,* the defendant doctors had engaged in a persistent course of conduct in the District of Columbia, the trial court was troubled about this conclusion, noting that the doctors' visits to the District were no more than those of visiting suburbanites who would not expect to be "haled into court" in the District of Columbia. The trial court was also troubled about the fact that District of Columbia courts had a "negligible interest" in this litigation between a Virginia patient and her Virginia doctors, and that exercising personal jurisdiction in the face of such a slight interest by the forum might implicate due process concerns.

vidual defendants were not subject to personal jurisdiction here because they have not "caus[ed] tortious injury in the District of Columbia by an act or omission outside of the District of Columbia."

The trial court also addressed personal jurisdiction under section 13–423(a)(1), which allows personal jurisdiction based on a defendant's "transacting any business in District of Columbia," provided that the claim alleged "aris[es] from acts" which constitute the transacting of business in the District. See D.C.Code § 13–423(b). The trial court determined that Ms. Bourdin's primary physical injury as a result of the doctors' negligence occurred in Virginia, where most of the allegedly negligent acts took place during the regularly scheduled prenatal appointments. Moreover, the trial court determined, even assuming an injury in the District, the claimed injury did not "arise from" the doctors' contacts with the District. In this regard, the trial court specifically mentioned that the "only conceivably relevant contacts" were 1) Ms. Bourdin's telephone call from the District of Columbia on the day of the accident, October 29, 1990, 2) the doctors' advertising in the Yellow Pages and at the IMF Health Center, and 3) the doctors' medical licenses to practice in District of Columbia. The trial court discounted these contacts and concluded that they were too tenuous to provide a basis for personal jurisdiction under D.C.Code § 13–423(a)(1), particularly as there was no connection between the doctors' advertising in the District and Ms. Bourdin's decision to seek their medical services, because she had been referred by her sister.

6. We note that D.C.Code § 13–423(a) provides for personal jurisdiction over a person "who acts directly or by an agent." The complaint alleges that "Defendants Radice and Gahres conduct a major part of the business and affairs of their medical practice in obstetrics and gynecology though defendant Gahres and Radice, MD.s, Ltd., a professional corporation in which they are the principal shareholders, officers and employees." The trial court considered, in connection with its analysis under D.C.Code § 13–334 ("doing

## III.

Because the trial court found that, on the facts of this case, the individual defendants engaged in a "persistent course of conduct in District of Columbia" sufficient to satisfy that requirement under section 13–423(a)(4), a finding not challenged on appeal, the defendants also would appear to have been "transacting any business in the District of Columbia" for purposes of section 13–423(a)(1).[6] The question remains, then, whether the plaintiffs' claims "aris[e] from" the business that the doctors transacted in the District. Since the trial court's order in this case, we have had occasion to consider the reach of personal jurisdiction under D.C.Code § 13–423(a)(1) in the context of an injury caused outside the District by a defendant that actively solicited customers in the District. In Shoppers Food Warehouse, a District resident sued a food store located in Maryland for injury resulting from the plaintiff's slip and fall while shopping at one of the defendant's Maryland stores. See 746 A.2d at 323. We affirmed the trial court's exercise of personal jurisdiction over the defendant because defendant,

> through its extensive advertising activity in a major District of Columbia newspaper [The Washington Post] purposefully and deliberately solicited District residents as customers for its nearby Maryland and Virginia stores and thus transacted business in the District; and further, because [plaintiff's] claim was related to or had a discernible relationship to its advertising, [defendant] could have reasonably anticipated being haled

business"), that Dr. Gahres and Dr. Radice are "agents of G & R Ltd.," but did not consider that agency relationship in its analysis under D.C.Code § 13–423(a), which expressly refers to asserting personal jurisdiction based on the conduct of agents. In this connection, assuming arguendo that neither doctor was at the office when Ms. Bourdin called on October 29, 1990, shortly after the car accident, the receptionist also could be an "agent" of G & R Ltd.

into court to defend against a personal injury suit brought by a District resident.

*Id.* at 336.

Although the facts in the instant appeal are not exactly like those in *Shoppers Food Warehouse,* in that opinion we expressed a standard for the relationship required by section 13–423(b) between the plaintiff's claim and the defendants' conduct that constitutes "transacting any business" or a "persistent course of conduct." Specifically, we rejected the argument—relied upon by the trial court here—that because a plaintiff has not personally acted upon the defendant's advertising, the necessary connection between the claim and the defendant's conduct cannot be made. *Shoppers Food Warehouse,* 746 A.2d at 337. As we stated in *Shoppers Food Warehouse,* a sufficient nexus between the plaintiff's claim and the defendant's forum activities requires only that the claim must be "related to" or "substantial[ly] connect[ed] with" the defendant's conduct in the forum. *Id.* at 335. Although an important factor in that case was that defendant's sole conduct in the District, the advertising, could be expected to reach many District of Columbia residents who would be persuaded to shop at the suburban stores, in this case the defendants' advertising in the Washington Yellow Pages and at the IMF Health Center would not appear to approximate the "extensive advertising" in which Shoppers Food Warehouse engaged.

On the other hand, the defendants here had significantly greater contacts with the District of Columbia than just advertising, and these professional and commercial contacts, see *supra* note 5, arguably provide the "flexible" nexus contemplated by section 13–423(b). *See Shoppers Food Warehouse,* 746 A.2d at 335. Even if we were to focus only on the doctors' advertising in the Yellow Pages of the District of Columbia telephone book and at the IMF Health Center, the trial court's analysis discounting the significance of that adver-

tising because Ms. Bourdin did not rely on it to become the defendants' patient is, at least, questionable under *Shoppers Food Warehouse.* Because that opinion was not available to the trial court at the time the trial court made its decision in this case and because the trial court so carefully marshaled the facts of this case in its comprehensive order, we remand the case for its renewed consideration of those facts as a possible basis for personal jurisdiction under section 13–423(a)(1) in light of the guidance provided by *Shoppers Food Warehouse.*

■ On remand, if the trial court does not find personal jurisdiction under subsection (a)(1), it should reevaluate whether the defendants caused "tortious injury in the District" resulting from "an act or omission outside the District," D.C.Code § 13–423(a)(4), in the context of the "nexus" requirement as articulated in *Shoppers Food Warehouse,* which applies equally to all subsections of section 13–423(a). We agree with the trial court that the relevant inquiry is focused on whether the doctors, by commission or omission, negligently treated Ms. Bourdin by failing to properly diagnose and treat the injury sustained during her pregnancy. In this regard, as the trial court recognized, "the original physical injury" is paramount in determining where the tortious injury has been caused. *See Leaks v. Ex–Lax, Inc.,* 424 F.Supp. 413, 416 (D.D.C.1976). In this case, most of the occasions for the defendants' negligence, and therefore, tortious injury, occurred during Ms. Bourdin's scheduled visits to the doctors' office in Virginia. There is also support in the record, however, that the triggering event, the automobile collision, occurred in the District of Columbia, and that the first time that the doctors were negligent arguably was when they failed to advise her properly when she called them from the District. To the extent that the pregnancy began to be imperiled at that time as a result of the unmonitored and untreated physical impact on October 29, 1990, Ms.

Bourdin's original injury occurred while she was in the District of Columbia.

The place of injury under section 13–423(a)(4) should not be confused, however, with the requirement that the defendants must have initiated contact in order to meet the requirement for "engag[ing] in persistent conduct." In this case, Ms. Bourdin's telephone call from the District to the doctors' office in Virginia would not, standing alone, establish defendants' "persistent course of conduct."[7] Rather, her telephone call merely provided the instrument through which the doctors communicated their allegedly negligent advice from Virginia ("an act or omission outside the District of Columbia") which may have had the effect of causing physical injury while she was in the District. Although we agree with the trial court's concern that "secondary injury" which follows the plaintiff wherever she travels cannot form the basis for personal jurisdiction over the defendant, we do not consider that the presence of Ms. and Mr. Bourdin, both of whom were employed in the District, was incidental. *Cf. Leaks,* 424 F.Supp. at 415 (holding there to be no personal jurisdiction under section 13–423(a)(4) because the plaintiff was injured in Arizona during a business trip, rather than in the District, when she "took the pills in Arizona, suffered the reaction there, and was treated there," despite continuing to suffer from her injuries after her return to her home in the District of Columbia). Just as in *Leaks,* where Arizona was the site of the plaintiff's "original injury" and the District of Columbia merely the place where the plaintiff continued to suffer residual injury, *see* 424 F.Supp. at 415, so Ms. Bourdin could be said to have been injured in the District because the District is where she first had contact with defendants' negligent advice and where she first began to experience the resulting physical reaction; Virginia is the jurisdiction where her injuries continued to cumulate and became more serious, with repeated acts of negligence there.

The case is remanded for the trial court's consideration.

*Remanded.*

---

7. The trial court found a "persistent course of conduct" to exist for other reasons. See *supra note 5.*