Theodore P. HARRIS, Appellant,

v.

Jerry A. OMELON, M.D., Appellee.

No. 08–CV–1025.

District of Columbia Court of Appeals.

Argued Oct. 28, 2009.

Decided Dec. 3, 2009.

Theodore P. Harris, pro se.

Andrew J. Spence, with whom Stephen L. Altman, Fairfax, VA, was on the brief, for appellee.

Before RUIZ and OBERLY, Associate Judges, and NEWMAN, Senior Judge.

NEWMAN, Senior Judge:

Holding that there was a lack of personal jurisdiction, the trial court dismissed this malpractice claim against a Virginia doctor whose only connection with the District of Columbia shown of record was a single phone call to a D.C. pharmacy to relay a prescription order for a patient. We affirm.

On the morning of September 20, 2004, Harris was at home in Washington, D.C. watching television when he saw an advertisement by The George Washington Medical Center seeking volunteers for a clinical research study on bipolar disorders. Harris called the Center to inquire about volunteering and was told he was not eligible to participate in the study. However, he came away from the phone call with the information that the study concerned the off-label treatment of bipolar disorders using the drug Abilify at a dosage of 15 mg per day. He was told to contact his own doctor concerning the use of the drug for this off-label purpose.

Harris then called Dr. Jerry Omelon, a general practitioner working at McLean Immediate Care in McLean, Virginia. He claimed to have "prior experience with" Dr. Omelon, although the record indicates no details about the nature of this experience. However, Harris does not allege that Dr. Omelon is licensed to practice medicine in the District of Columbia or has ever practiced medicine here. Instead, he is licensed in Virginia and has both his medical practice and his residence in that state. Harris also confirms that Dr. Omelon has never examined or treated him in the District. Subsequently, Dr. Omelon prescribed the drug Abilify for Harris and called in the prescription order to the CVS Pharmacy nearest to Harris' home in D.C.

After taking the prescription, Harris experienced medical complications which led to repeated hospitalizations, including three surgeries and multiple medical interventions. He was subsequently diagnosed with myasthenia gravis, a neuromuscular disorder that may have some connection to the drug Abilify. Harris then brought this action claiming that Dr. Omelon acted improperly in prescribing the drug Abilify and did not adequately inform him of the risks associated with the drug.

The trial court agreed with Dr. Omelon that Harris had not pleaded any facts

sufficient to establish that the District of Columbia's long-arm statute or the Due Process Clause of the Fifth Amendment permitted it to exercise personal jurisdiction in this case. Harris requested additional time to file an opposition, which the court stated it would treat as a motion to reconsider. Harris filed his opposition asserting that the use of the "telephone wires to call in a prescription" constituted grounds for personal jurisdiction. The trial court disagreed and issued a final order dismissing the case.

■■■■ We review the trial court's dismissal for lack of personal jurisdiction *de novo. Holder v. Haarmann & Reimer Corp.,* 779 A.2d 264, 269 (D.C.2001). The plaintiff bears the burden of proving that the court may establish personal jurisdiction over the defendant. *Lott v. Burning Tree Club, Inc.,* 516 F.Supp. 913, 918 (D.D.C.1980). In this case, appellant asks us to find personal jurisdiction based solely on a phone call across state borders, a call made not in the process of doing or soliciting business but one made for the convenience of the plaintiff in filling a prescription when there was no other contact shown between the doctor and the District of Columbia. We find that this is not sufficient to create personal jurisdiction over the defendant.

■■■■ To establish personal jurisdiction for tortious injury under the District of Columbia's long-arm statute requires that the claim arise from the individual:

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

D.C.Code § 13–423(a) (2001).[1]

■■■■ In assessing whether there are sufficient minimum contacts, "the most critical inquiry is not whether the nonresident defendant is physically present in the forum but whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum" and are not "fortuitous or accidental." *Mouzavires v. Baxter,* 434 A.2d 988, 995, 997 (D.C.1981) (following *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). This requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State" to establish personal jurisdiction. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *see also*

---

1. The District of Columbia's long-arm statute is coextensive with the reach of personal jurisdiction permitted under the Due Process Clause. *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,* 355 A.2d 808, 810–11 (D.C.1976) (en banc). We consider both "'traditional notions of fair play and substantial justice'" and "minimum contacts" between the defendant and the state in its exercise of personal jurisdiction. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted). In doing so, we seek to weigh the District's interest in providing its residents with a means to redress grievances caused by out-of-state parties, the benefit of contacts with the state against the consequences of those contacts, and the burden of litigation on the out-of-state party. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

*Shoppers Food Warehouse v. Moreno,* 746 A.2d 320 (D.C.2000) (en banc).

██ The facts of this case do not indicate that Dr. Omelon was "transacting any business" that would bring him within the reach of the statute. D.C.Code § 13–423(a)(1). This provision includes any transaction of business within the District of Columbia that does not offend the Due Process Clause. *Holder,* 779 A.2d at 270. There must be "purposeful, affirmative activit[ies]" directed at D.C. residents by the person over whom jurisdiction is sought. *Shoppers Food Warehouse,* 746 A.2d at 330–31 (finding personal jurisdiction for injury sustained in a Maryland store based on persistent advertisements in the District of Columbia even where plaintiff may not have personally viewed the advertisements).

██ Here appellant does not dispute that Dr. Omelon is not licensed in the District of Columbia and does not maintain his professional practice or residence here. He also admits that he received no care by Dr. Omelon in the District of Columbia on the occasion in question and has not alleged that his prior experience with the doctor was anywhere other than in Virginia. Likewise, there is no indication that Dr. Omelon advertised in the District or availed himself of the benefits of the District in any meaningful way. This is not sufficient to create personal jurisdiction on the basis of the transacting business provision of D.C.Code § 13–423(a)(1).[2]

██ We turn then to consider whether personal jurisdiction exists under § 13–423(a)(4) for an act or omission done outside of the District of Columbia that causes an injury within the District. However, to find personal jurisdiction under this provision, there must be an additional connection between the individual and some regularly conducted or solicited business or another persistent course of conduct in D.C. D.C.Code § 13–423(a)(4). The facts alleged here ask us to consider only the phone call made from the doctor to the pharmacy located in the District of Columbia.

Appellant here has not even gone so far as to allege that it was Dr. Omelon's practice to prescribe by phone to D.C. pharmacies in general. Additionally, the phone call to the pharmacy was made at the request of and for the convenience of the appellant, who could then be spared the effort of picking up the prescription in person in Virginia or waiting for it to be sent by mail. Considered in this light, finding jurisdiction under the long-arm statute on these circumstances would be comparable to finding jurisdiction based solely on the patient's choices and actions. Courts have been unwilling to do this. *See Wright v. Yackley, supra* note 2; *Ballard v. Rawlins, supra* note 2; *Cronin v. Sierra Med. Ctr., supra* note 2. While this ap-

---

**2.** There has been no assertion of any contract to supply services within the District of Columbia that would bring this case within § 13–423(a)(2). Nor does this case fall within the scope of § 13–423(a)(3). We note that courts generally decline to assert personal jurisdiction over physicians where the doctor-patient contact is established unilaterally by the patient. *See, e.g., Wolf v. Richmond County Hosp. Auth.,* 745 F.2d 904 (4th Cir.1984); *Wright v. Yackley,* 459 F.2d 287 (9th Cir. 1972); *Ballard v. Rawlins,* 101 Ill.App.3d 601, 56 Ill.Dec. 940, 428 N.E.2d 532 (1981); *Cro-*

*nin v. Sierra Med. Ctr.,* 129 N.M. 521, 10 P.3d 845 (Ct.App.2000). *But see Kennedy v. Freeman,* 919 F.2d 126 (10th Cir.1990); *Bullion v. Gillespie,* 895 F.2d 213 (5th Cir.1990). It is also persuasive that the D.C. Circuit has found that a phone call into the District does not constitute an act within the forum for the purposes of bringing a tort claim for defamation. *See Tavoulareas v. Comnas,* 232 U.S.App. D.C. 17, 720 F.2d 192 (1983); *Margoles v. Johns,* 157 U.S.App. D.C. 209, 483 F.2d 1212 (1973).

pears to limit the ability to offer redress to the forum state's residents it protects another interest, namely that of having physicians care for the "traveling public" without regard to where the patient hails from or is bound to. *Wright,* 459 F.2d at 290. To do otherwise could bring within the jurisdiction of our court any doctor who calls in a prescription to a local pharmacy here, whether for the convenience of a D.C. resident or to assist someone who requires medication while visiting here on business or vacation.

This case is distinguishable from an earlier case heard by this court and remanded to consider personal jurisdiction under § 13–423(a)(4). *Etchebarne–Bourdin v. Radice,* 754 A.2d 322 (D.C.2000). In that case, the plaintiff-appellant was the patient of two doctors who practiced in Virginia, but had previously had a D.C. office. The physicians were members of the Washington Gynecological Society, routinely attended Grand Rounds at a D.C. hospital and had advertised their services to residents in the District of Columbia. Although the trial court found no personal jurisdiction, its decision predated this court's ruling in *Shoppers Food Warehouse.* On appeal, this court remanded for consideration in light of *Shoppers Food Warehouse* and whether personal jurisdiction could be asserted based on defendants having caused tortious injury in the District by acts or omissions outside of the District, as the trial court had found they had a persistent course of conduct here. *Etchebarne–Bourdin,* 754 A.2d at 327.

On a second appeal in the same case, after concluding that § 13–423(a)(1) was inapposite, we examined whether the doctors' "persistent course of conduct" sufficed to meet the requirements for personal jurisdiction under § 13–423(a)(4). *Etchebarne–Bourdin v. Radice,* No. 05–CV–1059, 982 A.2d 752, 2009 D.C.App. Lexis 539 (D.C. October 22, 2009) (herein-

after *Etchebarne–Bourdin II*). We held that there was no additional nexus requirement between the claim and the independent "plus" factors of § 13–423(a)(4) on top of the connection required by subsection (b). *See* D.C.Code § 13–423(b) (requiring that "only a claim for relief arising from acts enumerated in this section may be asserted"). Thus we adopted the analysis of *Crane v. Carr,* 259 U.S.App. D.C. 229, 234–35, 814 F.2d 758, 763–64 (D.C.Cir. 1987), that the plus factors merely provide "something more" to "filter out cases in which the inforum impact is an isolated event" where the defendant has "scant" or nonexistent contacts with the forum. In *Etchebarne–Bourdin II,* we concluded that this created personal jurisdiction under § 13–423(a)(4) over the doctors based on their activities with D.C. hospitals and medical associations, even though those activities were not connected to the cause of injury underlying the malpractice claim.

Unlike the *Etchebarne–Bourdin* cases, there is no comparable showing that Dr. Omelon had any similar nexus with the District of Columbia, either through his business or as part of a plausibly persistent course of conduct. The prescribing doctor has no alleged connections based on his license, practice location, advertisements or solicitations within the District. As such, the appellant has not shown any interaction that would allow the long-arm statute to create personal jurisdiction over the doctor for acts or omissions undertaken from his office in Virginia relating to the appellant's injuries.

*Affirmed.*

RUIZ, Associate Judge, concurring:

I agree with the court's opinion that Dr. Omelon's single call to a pharmacy in the District of Columbia to phone in a prescription for the convenience of a D.C. patient cannot give rise to personal juris-

diction under the D.C. long-arm statute, consistent with due process.

I write separately to address two additional points made by appellant at oral argument. First, appellant represented to the court that he attempted to present a supplemental pleading to the trial judge at the hearing where the trial judge granted appellee's motion to dismiss for lack of jurisdiction. Appellee's counsel represented that appellant had made such an attempt but could not recall the contents of the document. I note that there is a document, dated June 19, 2008, attached to appellant's opening brief which appears to be the one appellant referred to at oral argument, as the relevant hearing in the trial court took place on June 20, 2008. The trial judge did not accept the submission and the document was not made part of the record on appeal. Appellant's subsequent attempt, once the case was on appeal to this court, to add more facts, simply came too late. *See* D.C.App. R. 10(a) (record on appeal includes only the transcript of proceedings, docket, and "original papers and exhibits filed in the Superior Court"). However, even if we were to consider appellant's additional filing, there are no facts alleged in that document to base a finding of personal jurisdiction over Dr. Omelon.

Second, at oral argument appellant contended that Dr. Omelon opted to suggest a new medication during his telephone call with appellant and that, in doing so, Dr. Omelon provided some form of medical treatment over the telephone while he, the patient, was located in the District of Columbia. We cannot address this new argument, made for the first time on appeal. *See Ramos v. United States*, 569 A.2d 158, 162 n. 5 (D.C.1990); *Coates v. Watts*, 622 A.2d 25, 28 n. 1 (D.C.1993) (Steadman, J., concurring) ("To raise an issue for the first time on oral argument is too late, even if properly preserved in the trial court.").

On the scant facts of record, the trial court was correct not to exercise personal jurisdiction based on the telephone conversation between appellant and Dr. Omelon. *See Wright v. Yackley*, 459 F.2d 287, 289 & n. 4 (9th Cir.1972) (holding that doctor's mailing of prescriptions to the forum state did not warrant personal jurisdiction, but noting that jurisdiction might be justified where "a doctor could be said to have treated a[ ] . . . patient by mail or to have provided a new prescription or diagnosis in such fashion.").

With this addition, I join the opinion for the court.