# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 25, 2011　　　　　Decided April 15, 2011

No. 10-7051

COMPANHIA BRASILEIRA CARBURETO DE CALICIO, ET AL.,
APPELLANTS

v.

APPLIED INDUSTRIAL MATERIALS CORPORATION, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:01-cv-00646)

———

*Bruce K. Cohen* argued the cause for appellants. With him on the briefs were *Daniel B. Allanoff* and *Michael R. Lazerwitz.*

*Dale Hershey* argued the cause for appellees. With him on the brief were *Michael R. Borasky*, *Audrey K. Kwak*, *James H. Hulme*, *Matthew M. Wright*, *Alan Kanzer*, *Amber Wessels*, *Edward J. Longosz, II*, and *Charles R. Claxton*. *Marianne R. Casserly* entered an appearance.

Before: ROGERS, TATEL, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: Three Brazilian corporations brought suit against four American corporations and two of the American corporations' parent companies. The Brazilian plaintiffs alleged that defendants submitted fraudulent petitions to the U.S. International Trade Commission and thereby induced the ITC to impose unwarranted duties on plaintiffs' products.

The District Court dismissed plaintiffs' complaint for lack of personal jurisdiction. Because none of the defendants is located or incorporated in the District of Columbia, plaintiffs primarily relied on defendants' petitions to the ITC (a government agency located in Washington, D.C.) to establish personal jurisdiction over the defendants. The District Court held that the petitions to the ITC were not a basis for personal jurisdiction because, under the District of Columbia's "government contacts" exception to D.C.'s personal jurisdiction statute, "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc). The District Court also rejected plaintiffs' alternative argument that jurisdiction was proper because defendants had conspired with a trade association that was located within the District of Columbia.

We agree with the District Court that plaintiffs' allegation that defendants conspired with a trade association is insufficient to support personal jurisdiction.

The government contacts issue is more difficult. Plaintiffs argue that the government contacts exception does not apply because defendants' petitions to the ITC were fraudulent. Therefore, according to plaintiffs, defendants' petitions to the ITC provide a basis for personal jurisdiction over defendants. The scope of the government contacts exception is unsettled, however, under the D.C. Court of Appeals' precedents. The D.C. Court of Appeals is of course the controlling authority for interpretation of D.C. law, and that court promulgated the government contacts exception. We therefore deem it appropriate to certify to the D.C. Court of Appeals a question necessary to the resolution of this case:

> Under District of Columbia law, does a petition sent to a federal government agency in the District provide a basis for establishing personal jurisdiction over the petitioner when the plaintiff has alleged that the petition fraudulently induced unwarranted government action against the plaintiff?

I

In 1994, the U.S. International Trade Commission imposed duties on imports of ferrosilicon from Brazil. Ferrosilicon is an alloy used in manufacturing. In 1999, the ITC removed those duties after discovering that much of the information on which the ITC had relied in imposing the duties was false. The ITC determined that domestic producers of ferrosilicon had submitted that false information to the ITC in two petitions (one filed in 1992 and a second filed in 1993), as part of a conspiracy to fix the price of ferrosilicon in the United States. *See Ferrosilicon From Brazil, China, Kazakhstan, Russia, Ukraine and Venezuela*, Inv. Nos. 303-TA-23, 731-TA-566-570, 731-TA-641, 751-TA-21-27, USITC Pub. 3218 (Aug. 1999).

In 2001, three Brazilian ferrosilicon manufacturers brought suit in the U.S. District Court for the District of Columbia against four domestic producers of ferrosilicon and two of the domestic producers' foreign-owned parent companies. Plaintiffs sought damages resulting from the duties imposed on their products by the ITC, alleging that those damages were caused by defendants' submission of the fraudulent petitions to the ITC.

The District Court stayed plaintiffs' suit pending defendants' appeal of the ITC's decision. The Court of International Trade affirmed the ITC's decision in 2008, and the Court of International Trade's judgment was in turn affirmed by the Federal Circuit in 2009. *See Elkem Metals Co. v. United States*, 30 I.T.R.D 2076 (Ct. Int'l Trade 2008), *aff'd*, 324 F. App'x 923 (Fed. Cir. 2009).

In 2010, the District Court dismissed plaintiffs' complaint for lack of personal jurisdiction over defendants. We review that decision de novo. *See FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008).

II

Plaintiffs argue that defendants' relationship with The Ferroalloys Association, a trade association that was located within the District of Columbia, establishes personal jurisdiction over the defendants because defendants conspired with that association in submitting (and later defending) the fraudulent petitions to the ITC. *See Second Amendment*

*Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 523-24 (D.C. Cir. 2001).[1] We disagree.

To establish jurisdiction based on defendants' conspiracy with the association, plaintiffs "must plead *with particularity* the conspiracy as well as the *overt acts within the forum* taken in furtherance of the conspiracy." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (emphasis added) (internal quotation marks omitted). We agree with the District Court that plaintiffs failed to do so. With respect to overt acts in the forum, plaintiffs' complaint claims that defendants coordinated their efforts to deceive the ITC "through a series of meetings, telephone calls and mailings" that were "under the aegis of the" association. Complaint at 10-11, J.A. 60-61. Those claims do not allege any overt act within the District (other than contacts with the ITC, which we discuss below), much less do they allege an overt act with particularity. Plaintiffs' complaint does allege that one specific event – a February 12, 1991, meeting between several defendants – transpired within the District of Columbia. But plaintiffs made no effort to controvert an affidavit submitted by defendants stating that this meeting in fact took place in Virginia. "Thus, [plaintiffs] failed to plead with sufficient particularity any overt acts within the District of Columbia in furtherance of the conspiracy, and personal jurisdiction over [defendants] is unavailable under a conspiracy theory." *Jungquist*, 115 F.3d at 1031.

---

[1] The Ferroalloys Association was named as a defendant in plaintiffs' complaint, but the association has since gone bankrupt and is no longer a party to this litigation.

### III

Plaintiffs alternatively contend that the District Court had personal jurisdiction over the defendants because of defendants' allegedly fraudulent petitions to the U.S. International Trade Commission, a government agency located in Washington, D.C. The District of Columbia's jurisdictional statute allows personal jurisdiction over a company "transacting any business in the District of Columbia," provided that the claim against that company arises from business transacted in the District. D.C. Code § 13-423. Defendants do not dispute that petitioning the ITC to impose duties on one's competitors is "transacting business." Nor do defendants dispute that plaintiffs' claim arose from the filing of the petitions.

Rather, defendants assert that, under the government contacts exception to the District of Columbia's personal jurisdiction statute, petitioning the ITC cannot establish jurisdiction over the petitioner. The en banc D.C. Court of Appeals has explained the government contacts exception as meaning "that entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C. 1976).

If that were the end of the case law, we would apply the government contacts exception articulated in *Environmental Research* and affirm the District Court's ruling that there was no jurisdiction in this case. However, a subsequent decision of a D.C. Court of Appeals panel may have limited the

government contacts exception to cases in which the contacts with the federal government were an exercise of First Amendment rights. *See Rose v. Silver*, 394 A.2d 1368, 1372-74 (D.C. 1978); *see also Lex Tex Ltd. v. Skillman*, 579 A.2d 244 (D.C. 1990); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786 (D.C. Cir. 1983). The *Rose* case arguably means that fraudulent petitions to government agencies do not fall within the government contacts exception. *Cf. Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511-15 (1972) (fraudulent petition not protected by Petition Clause). Relatedly, this Court has suggested in dicta that the government contacts exception might not apply where a plaintiff "made credible and specific allegations . . . that the companies had used [government] proceedings as an instrumentality of [an] alleged fraud." *Naartex*, 722 F.2d at 787. Of course, such a rule could largely negate the government contacts exception because it might be easy to sufficiently plead fraud in many cases that otherwise might be dismissed because of the government contacts exception. Thus, it is not clear whether the D.C. Court of Appeals would hold that the government contacts exception applies in cases of an allegedly fraudulent petition to a government agency.

The D.C. Court of Appeals may answer certified questions from this Court that "may be determinative of the cause pending in [the] certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the District of Columbia Court of Appeals." D.C. Code § 11-723(a). This Court has certified questions to the D.C. Court of Appeals when "District of Columbia law is genuinely uncertain" and the question is of "extreme public importance." *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1303 (D.C. Cir. 2002) (internal quotation marks omitted). As discussed above, the scope of the government contacts exception is genuinely uncertain.

This case presents a question of sufficient public importance because its resolution could affect numerous individuals and corporations that petition the federal government. *Cf. id.* (question is of "extreme public importance" because it affects "architects throughout the country (perhaps even around the world)" who "often submit bids to perform architectural services in this city").

We therefore certify the following question to the D.C. Court of Appeals:

> Under District of Columbia law, does a petition sent to a federal government agency in the District provide a basis for establishing personal jurisdiction over the petitioner when the plaintiff has alleged that the petition fraudulently induced unwarranted government action against the plaintiff?

*So ordered.*