COMPANHIA BRASILEIRA CARBU-RETO DE CALCIO—CBCC, et al., Appellants,

v.

APPLIED INDUSTRIAL MATERIALS CORPORATION, et al., Appellees.

No. 11–SP–500.

District of Columbia Court of Appeals.

Argued Oct. 27, 2011.
Decided Jan. 26, 2012.

---

3. Bar Counsel elected not to pursue additional charges in BDN 219–11, that respondent failed to represent a fourth client with requisite care. Although this claim was not adjudicated, Bar Counsel has reserved the right to present the facts and circumstances of misconduct in connection with any petition for reinstatement.

4. Board of Professional Responsibility Rule 17.5(a)(iii).

5. *See, e.g., In re Steele,* 868 A.2d 146, 153 (D.C.2005).

6. *See In re Evans,* 902 A.2d 56 (D.C.2006) (six-month suspension with final ninety days stayed in favor of one year probation for violating Rules 1.1(a), 1.1(b), 1.7(b)(4) and 8.4(d)); *In re Banks,* 709 A.2d 1181 (D.C. 1998) (ninety-day suspension with final thirty days stayed during one year of probation for violating Rules 1.3(a), 1.3(c), 1.4(a) and 1.5(b)).

Bruce K. Cohen, with whom Daniel B. Allanoff, Michael R. Lazerwitz, Michael J. Freed, Steven A. Kanner, Robert J. Wozniak, Mark Reinhardt, and Mark Wendorf were on the brief, for appellants. Steven J. Greenfogel also entered an appearance for appellants.

Dale Hershey, with whom the following were on the brief: Michael R. Borasky, Audrey K. Kwak, and Edward J. Longosz, II, for appellees Elkem Metals, Inc., and Elkem AS; James H. Hulme and Matthew M. Wright for appellee CC Metals & Alloys, LLC; Alan Kanzer and Amber Wessels for appellee Evonik Degussa GmbH; and Charles R. Claxton, Bethesda, MD, for appellee Applied Industrial Materials Corporation.

Before WASHINGTON, Chief Judge, and FISHER and OBERLY, Associate Judges.

FISHER, Associate Judge:

Pursuant to D.C.Code § 11–723 (2001), the United States Court of Appeals for the District of Columbia Circuit certified the following question of law to this court:

> Under District of Columbia law, does a petition sent to a federal government agency in the District provide a basis for establishing personal jurisdiction over the petitioner when the plaintiff has alleged that the petition fraudulently induced unwarranted government action against the plaintiff?

*Companhia Brasileira Carbureto de Calicio v. Applied Industrial Materials Corp.*, 395 U.S.App. D.C. 106, 110, 640 F.3d 369, 373 (2011). We hold that it does.

## I. Legal Framework

■ Before a court in the District of Columbia may exercise personal jurisdiction over a nonresident defendant, two criteria must be satisfied. First, the exercise of personal jurisdiction must be authorized by the District's long-arm statute. As relevant here, that statute provides:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
>
> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or con-

sumed, or services rendered, in the District of Columbia[.]

D.C.Code § 13–423(a) (2001). "When jurisdiction over a person is based solely upon this section [of the long-arm statute], only a claim for relief arising from acts enumerated in this section may be asserted against him." *Id.* § 13–423(b).

■ Second, the exercise of personal jurisdiction must comport with the requirements of due process. "To satisfy the requirements of due process, the non-resident defendant must have had sufficient 'minimum contacts' with the forum state to justify subjecting him to the exercise of personal jurisdiction by its courts." *Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 811 (D.C.1976) (en banc); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In assessing whether a defendant's contacts with the District are sufficient, "the most critical inquiry is not whether the nonresident defendant is physically present in the forum but whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum and are not fortuitous or accidental." *Harris v. Omelon*, 985 A.2d 1103, 1105 (D.C.2009) (internal editing and citation omitted); *see also World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–99, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "This requires 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State' to establish personal jurisdiction." *Harris*, 985 A.2d at 1105 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

We have said that the District's long-arm statute permits the exercise of personal jurisdiction over nonresident defendants to the fullest extent permissible un-

der the due process clause of the United States Constitution. *Environmental Research*, 355 A.2d at 810–11; *see also Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 326 (D.C.2000) (en banc). Nonetheless, in *Environmental Research*, we recognized a "government contacts" exception under which courts in the District of Columbia would refrain from exercising personal jurisdiction even though the requirements of due process and the long-arm statute otherwise would be satisfied.[1] 355 A.2d at 813. Recognizing the "unique character of the District as the seat of national government and ... the correlative need for unfettered access to federal departments and agencies for the entire national citizenry," we held that "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Id.* "To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum." *Id.*

Since our decision in *Environmental Research*, this court has reaffirmed the government contacts principle while recognizing some limitations on its scope. *See, e.g., Lex Tex Ltd. v. Skillman*, 579 A.2d 244 (D.C.1990); *Rose v. Silver*, 394 A.2d 1368 (D.C.1978). Meanwhile, other courts have suggested that there is, or may be, an exception under which individuals who fraudulently petition the government lose the protection of the govern-

ment contacts doctrine and thus may be subject to personal jurisdiction based on their contacts with federal agencies. *See, e.g., Naartex Consulting Corp. v. Watt*, 232 U.S.App. D.C. 293, 301, 722 F.2d 779, 787 (1983) (affirming dismissal for lack of personal jurisdiction based on government contacts exception but stating, in dictum, that "[a] different case might be presented had Naartex made credible and specific allegations in the district court that the companies had used the proceedings as an instrumentality of the alleged fraud"); *Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 243 (D.Md.1992) ("[T]he Court will only permit the use of this fraud exception where plaintiffs have not merely alleged fraud but have established a prima facie case of fraud."); *Lamb v. Turbine Design, Inc.*, 273 Ga. 154, 538 S.E.2d 437, 440 (2000) (noting that "there is a fraud exception to the government contacts rule" but declining to apply it "when a company or an individual has allegedly provided misleading information in a government petition that does not impair the government agency in performing its duties").

Although we have not addressed the possibility of a fraud exception, some of our decisions may have implicitly narrowed the scope of the government contacts doctrine by concluding that "the First Amendment provides the only principled basis" supporting it. *Rose*, 394 A.2d at 1374; *see also Lex Tex*, 579 A.2d at 248–49. Since the Supreme Court has held, in other circumstances, that at least some fraudulent petitions are not protected by the First Amendment, *see California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511–15, 92 S.Ct. 609, 30 L.Ed.2d 642

---

1. In doing so, we built upon decisions of the United States Court of Appeals for the District of Columbia Circuit and our predecessor court, the Municipal Court of Appeals for the District of Columbia. *See, e.g., Mueller Brass Co. v. Alexander Milburn Co.*, 80 U.S.App. D.C. 274, 152 F.2d 142 (1945); *Weisblatt v. United Aircraft Corp.*, 134 A.2d 713 (D.C. 1957).

**1132**

(1972), our decision in *Rose* "arguably means that fraudulent petitions to government agencies do not fall within the government contacts exception," *Companhia Brasileira Carbureto de Calicio*, 395 U.S.App. D.C. at 110, 640 F.3d at 373.

## II. Factual and Procedural Background

The relevant facts have been recounted by the United States Court of Appeals and by the United States District Court, *see Companhia Brasileira Carbureto de Calicio v. Applied Industrial Materials Corp.*, 395 U.S.App. D.C. 106, 640 F.3d 369 (2011); *Companhia Brasileira Carbureto de Calcio–CBCC v. Applied Industrial Materials Corp.*, 698 F.Supp.2d 109 (D.D.C.2010), and we will describe them only briefly here. In 1993, domestic producers of ferrosilicon, an alloy used in manufacturing steel, successfully petitioned the United States International Trade Commission (ITC) to impose duties on ferrosilicon imports from Brazil.[2] After a few domestic producers were convicted of a price-fixing conspiracy, the ITC reconsidered, and reversed, its earlier determination. The ITC also concluded that several domestic producers had submitted false and misleading information which had provided the basis for its imposition of duties.

In 2001, three Brazilian producers sued a group of domestic producers and their foreign parents in the United States District Court for the District of Columbia, alleging that the domestic producers had fraudulently induced the ITC to impose duties on them. In 2010,[3] the district court dismissed the suit, concluding that it lacked personal jurisdiction over the defendants due, in part, to the government contacts principle.[4] The District of Columbia Circuit affirmed the district court's decision in large part, but concluded that the state of the government contacts principle was unsettled under District of Columbia law and certified this question to us.

## III. Analysis

The unique concerns underlying the government contacts principle are as compelling today as they were when this court decided *Environmental Research*. The right to petition the government is "one of the most precious of the liberties safeguarded by the Bill of Rights," *BE & K Constr. Co. v. Nat'l Labor Relations Bd.*, 536 U.S. 516, 524, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (internal quotation marks omitted); indeed, it "is implicit in [t]he very idea of government, republican in form." *McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985) (internal quotation marks omitted and alteration in original). This "right to petition extends to all departments of the Government," including administrative agencies. *California Motor Transport,*

---

2. The United States Department of Commerce is responsible for imposing antidumping duties, but it may do so only if the ITC first makes certain findings. 19 U.S.C. § 1673 (2006).

3. The district court stayed the litigation for several years pending resolution of the defendants' legal challenges to the ITC's decision on reconsideration. *See Elkem Metals Co. v. United States*, 2008 WL 4097463 (Ct. Int'l Trade 2008), *aff'd w/o op.*, 324 Fed.Appx. 923 (Fed.Cir.2009).

4. The district court indicated that plaintiffs were relying upon the "transacting business" and the "tortious injury" prongs of the District's long-arm statute. *Companhia*, 698 F.Supp.2d at 117 (citing D.C.Code § 13–423(a)(1) & (a)(3)). On appeal, the circuit court observed: "Defendants do not dispute that petitioning the ITC to impose duties on one's competitors is 'transacting business.'" *Companhia Brasileira Carbureto de Calicio*, 395 U.S.App. D.C. at 109, 640 F.3d at 372.

404 U.S. at 510, 92 S.Ct. 609. To hold that people have the right to petition their government but then to subject them to personal jurisdiction in the District of Columbia merely because they have exercised that right "would pose a threat to free public participation in government," *Environmental Research,* 355 A.2d at 813, potentially chilling the "robust" and "wide-open" exchange, *see New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), upon which our representative democracy depends. For this reason, we have held, "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Environmental Research,* 355 A.2d at 813.

However, nothing in our previous decisions holds or was intended to imply that individuals who enter the District of Columbia to fraudulently induce unwarranted government action against others, and succeed in doing so, should be able to avoid defending their actions in this jurisdiction by cloaking themselves in the government contacts doctrine. Such fraud does not warrant our protection. *See McDonald,* 472 U.S. at 484, 105 S.Ct. 2787 (rejecting the argument "that the Framers of the First Amendment understood the right to petition to include an unqualified right to express damaging falsehoods in exercise of that right"); *id.* at 485, 105 S.Ct. 2787

("The right to petition is guaranteed; the right to commit libel with impunity is not."). "[U]se of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected." *Id.* at 487, 105 S.Ct. 2787 (Brennan, J., concurring) (quoting *Garrison v. Louisiana,* 379 U.S. 64, 75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)).

"First Amendment rights may not be used as the means or the pretext for achieving 'substantive evils' which the legislature has the power to control." *California Motor Transport,* 404 U.S. at 515, 92 S.Ct. 609 (citation omitted). Fraud certainly is one such substantive evil. Moreover, those who abuse administrative or judicial processes "cannot acquire immunity by seeking refuge under the umbrella of 'political expression.'" *Id.* at 513, 92 S.Ct. 609. Thus, it does not offend the First Amendment to recognize a fraud exception to the government contacts doctrine. To the extent that other rationales, such as due process concerns, continue to underpin the doctrine,[5] a fraud exception does not offend those principles either. There is nothing unfair about subjecting individuals who have committed such fraud in the District of Columbia to the jurisdiction of our courts.[6] Having come here to seek the

---

**5.** The decision in *Rose v. Silver,* 394 A.2d 1368, including the suggestion that the government contacts doctrine was limited to activities implicating First Amendment rights, *id.* at 1374, generated controversy, *see Rose v. Silver,* 398 A.2d 787, 791 n. 7 (D.C.1979) (Harris, J., dissenting from the denial of rehearing en banc), and uncertainty, *see Naartex,* 232 U.S.App. D.C. at 300, 722 F.2d at 786 (noting the apparent conflict between the panel opinion in *Rose* and the en banc decision in *Environmental Research* ). We do not attempt to resolve that uncertainty here. Instead, we hold that a fraud exception is ap-

propriate even if rationales apart from the First Amendment support the government contacts doctrine.

**6.** To the contrary, the government contacts doctrine is itself a departure from normal principles of due process that underlie personal jurisdiction. Absent this doctrine, individuals who petition the government might well have "minimum contacts" with the District sufficient to confer personal jurisdiction in suits arising out of those contacts. Moreover, fraudulent petitions to the government can hardly be described as "fortuitous or ac-

"benefits and protection" that the adoption of their fraudulent petitions would have provided, such individuals cannot fairly cry foul when they are summoned before our courts. *See Shoppers Food Warehouse,* 746 A.2d at 325 (quoting *Int'l Shoe,* 326 U.S. at 319, 66 S.Ct. 154). For these reasons, we hold that a person who uses the government as an instrumentality of fraud, *see Naartex,* 232 U.S.App. D.C. at 301, 722 F.2d at 787, and thereby causes unwarranted government action against another, forfeits the protection of the government contacts exception.

Nevertheless, there is a legitimate concern that recognizing a fraud exception to the government contacts principle could expose the District to an "unrelenting wave" of litigation. *See Nichols,* 783 F.Supp. at 243. As Judge Kavanaugh aptly observed, such a rule, if applied loosely, "could largely negate the government contacts exception." *Companhia Brasileira Carbureto de Calicio,* 395 U.S.App. D.C. at 110, 640 F.3d at 373. We share this concern, but trust that courts will use the many tools at their disposal to determine whether the exercise of personal jurisdiction is appropriate in a given case.

■■■ Cases in which this fraud exception applies should be rare indeed. Individuals who petition the government for redress or favor should not be forced to defend civil actions in the District of Columbia because of unfounded allegations of fraud. This concern may be addressed in part by strict adherence to standards of pleading. It will not be sufficient to allege that the petitioner presented an unbalanced view of the issue or even that he made a false statement. The plaintiff seeking to overcome the government contacts doctrine must allege "fraud." [7] In this special context, moreover, it is not enough to allege that the petitioner acted with fraudulent intent when he or she made a false representation to a government agency. The plaintiff must also allege that the agency actually relied on the fraudulent information in making its decision. *See Naartex,* 232 U.S.App. D.C. at 301, 722 F.2d at 787 (requiring "credible and specific allegations ... that the companies had used the proceedings as an *instrumentality* of the alleged fraud") (emphasis added); *Atlantigas Corp. v. Nisource, Inc.,* 290 F.Supp.2d 34, 45–46 (D.D.C.2003) ("[T]he Court concludes that the generalized and conclusory allegations that false ... data were filed by [the defendant] with the Commission ... are insufficiently specific to justify application of the *Naartex* caveat. At most these filings were more a by-product of the Gas Scheme than instruments through which the Gas Scheme was effectuated.").

■■■ Unsupported allegations that a defendant has fraudulently induced unwarranted government action against the plaintiff will not be sufficient to invoke the fraud exception. *See, e.g., Nichols,* 783 F.Supp. at 243–44 (concluding that plain-

---

cidental." *See Harris,* 985 A.2d at 1105 (citation omitted). Purposeful efforts to defraud the government for individual gain constitute a "deliberate and voluntary association" with the District, and it should therefore come as no surprise to such individuals when they are haled into court in this forum. *See id.* Our cases discussing the government contacts doctrine certainly gave no assurance that individuals were free to commit fraud when petitioning their government.

7. "The essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Bennett v. Kiggins,* 377 A.2d 57, 59 (D.C.1977).

tiffs had failed to meet their burden). Only those allegations that meet the requirements for pleading fraud under Super. Ct. Civ. R. 9(b) or its federal counterpart [8] will be sufficient to confer personal jurisdiction in the District—and this clearly is not a toothless standard. *See, e.g., Atraqchi v. GUMC Unified Billing Servs.,* 788 A.2d 559, 563 (D.C.2002) (complaint did not plead fraud with particularity); *United States ex rel. Williams v. Martin–Baker Aircraft Co.,* 363 U.S.App. D.C. 419, 424–27, 389 F.3d 1251, 1256–59 (2004) (same).

■ Moreover, even when a plaintiff has met the standard for pleading fraud, defendants often will file a motion to dismiss challenging the factual basis for asserting personal jurisdiction over them. *See* Super. Ct. Civ. R. 12(b)(2); Fed. R.Civ.P. 12(b)(2). "[W]hen a question of the [trial court's] jurisdiction is raised, ... the court may inquire, by affidavits or otherwise, into the facts as they exist." *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). The court has "considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction, and normally it may rely upon either written or oral evidence." *Nichols,* 783 F.Supp. at 244 (quoting *Prakash v. American Univ.,* 234 U.S.App. D.C. 75, 80–81, 727 F.2d

1174, 1179–80 (1984)); *see generally* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1351 (2004).

■ When allegations of personal jurisdiction are challenged by invoking the government contracts exception, a plaintiff will have to come forward with evidence supporting his well-pled allegations of fraud.[9] With the rigorous pleading requirements we adopt today, and the trial court's ability to "inquire ... into the facts as they exist[,]" *Land,* 330 U.S. at 735 n. 4, 67 S.Ct. 1009, we have reason to hope that our decision will not, in practice, negate the government contacts exception.

We are not tasked with determining whether the plaintiffs in this case have met our pleading requirements with respect to any particular defendant. We address only the legal question certified to us— whether, under District of Columbia law, a petition submitted by a nonresident to a federal government agency in the District provides a basis for establishing personal jurisdiction over the petitioner when the plaintiff has alleged that the petition fraudulently induced unwarranted government action against the plaintiff. For the reasons, and with the limitations, described above, we hold that it does.

---

8. Super. Ct. Civ. R. 9(b) states that:

   In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally. This language is similar to that found in FED. R.CIV.P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Nothing we say in this opinion implies that a lesser allegation than fraud—for example, malicious or reckless petitioning of

an agency—warrants an exception to the government contacts principle.

9. "[W]hen ruling upon personal jurisdiction without an evidentiary hearing, a court ordinarily demands only a prima facie showing of jurisdiction by the plaintiffs." *Mwani v. bin Laden,* 368 U.S.App. D.C. 1, 6, 417 F.3d 1, 6 (2005). "[I]f the court takes evidence on the issue or rules on the personal jurisdiction question in the context of a trial[,] ... a heightened, preponderance of the evidence standard applies." *Mwani,* 368 U.S.App. D.C. at 7, 417 F.3d at 7; *see generally* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.31[5] (3d ed. 2011).

In accordance with D.C.Code § 11–723(g) (2001), the Clerk is directed to transmit a copy of this opinion to the United States Court of Appeals for the District of Columbia Circuit and to each of the parties.

*It is so ordered.*

